Willis W. GODFREY, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–622.

United States Court of Veterans Appeals.

March 6, 1995.

As Amended March 14, 1995.

**400**

Patrick Louis Carpentier, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Vietnam-era veteran Willis W. Godfrey, appeals from a January 9, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying reopening of claims for, inter alia, a back disorder and arthritis, and referring the claim of service connection for residuals of right-ankle fracture to the agency of original jurisdiction (AOJ) for further consideration. The appellant has filed a brief requesting that the Court vacate the Board's decision denying his claims for back condition and arthritis, reverse the Board's finding that the evidence submitted to support his claim was not new and material, and reverse the Board's decision that the issue of the residuals of the right-ankle fracture was not properly before the Board for review.

The appellant also requests that the Court remand the case to the Board to consider the issue of residuals of right-ankle and wrist and hand injuries. The Secretary has filed a brief urging summary affirmance as to the back-disorder and arthritis claims and remand as to the hand and wrist claims. He also argues that the referral to the AOJ on the right-ankle claim was proper. For the reasons that follow, the Court will affirm in part and vacate in part the BVA decision and remand two matters to the Board.

### I. Background

The veteran served on active duty in the U.S. Air Force from November 1953 to October 1957 and from December 1957 to January 1974. Record (R.) at 11–12, 272. His November 1953 entrance medical examination reported no abnormalities. R. at 13–14. An October 1954 Service Medical Record (SMR) noted that he had noticed "a steady, dull localized [backache] in the lumbo-sacral region since last June ... accompanied by a burning sensation on urination." R. at 27, 32, 53, 59. The clinical record reported that the "pains had radiated to both hips and become worse when he bends back his body". R. at 32. Physical examination revealed "slight pain, tender and spasm". R. at 33. The examination and notations were made in connection with a U.S. Army hospital admission and later diagnosis of urethritis. R. at 27. A November 1954 SMR stated that the veteran "ha[d] lumbo-sacral pain on exertion" and that he had "hurt his back while driving about 4 months ago". R. at 70. A September 1955 SMR reported that he had claimed to have "[fallen] or slipped down metal stairs" and that an accident report had been submitted. R. at 87. That record did not contain any reference to the veteran's back. A November 1955 SMR indicated that he had complained of a backache. *Ibid.*

A June 1956 SMR report stated the following: "Past mo[nth] mild discomfort over L2 [and] 3 on left side. Since 1954 driving [accident], snapped back [and] has hurt off [and] on. Constant soreness, mostly on extending back or bending over. More pain in the morning right after getting out of bed." R. at 99. The report stated that an x-ray had shown "a [s]pina [b]ifida L5". *Ibid.* (Spi-

na bifida is "a congenital cleft of the vertebral column with hernial protrusion of the meninges"; meninges are more than one of the three membranes that envelop the brain and spinal cord, WEBSTER'S MEDICAL DESK DICTIONARY 667, 422 (1986) [hereinafter WEBSTER'S].) However, an x-ray report of the same date stated "essentially normal". R. at 102. The impression was "myositis". R. at 99. (Myositis is muscular discomfort or pain from infection or an unknown cause, WEBSTER'S at 461.) The recommendation was "Xylocaine [i]nj[ection] locally" and "Tolsnol". R. at 99.

A September 1957 examination for discharge from his first period of service included a history in which the veteran reported that he had never had arthritis but that he did have "bone, joint, or other deformity". R. at 105. The examining physician's summary stated that other than mumps in childhood and an injury to his right leg, the veteran had "[d]enie[d] all other pertinent medical or surgical history." R. at 106, 108. The discharge clinical evaluation showed no abnormalities. R. at 107.

A December 1957 examination for reenlistment reported no abnormalities. R. at 111–12. A March 1961 SMR stated: "Back—no CVA [costovertebral angle, SHEILA B. SLOANE, MEDICAL ABBREVIATIONS AND EPONYMS 46 (1985)] tenderness." R. at 128. A July 1962 examination reported no abnormalities in the clinical evaluation (R. at 145, 150), and stated that other than mumps in childhood, the veteran "[d]enie[d] all else" (R. at 153). At that time, his history stated no arthritis and no "bone, joint, or other deformity". R. at 151.

A February 1963 SMR reported no abnormalities on examination. R. at 171. An August 1963 SMR stated that the veteran had reported having been in a car accident. R. at 120. There is no reference to any back pain but an x-ray of his left ankle was taken which was "negative". *Ibid.* Another August 1963 SMR stated that the veteran had "sustained 'fall off scooter'". R. at 166, 170. Pain and swelling of his right ankle was reported and diagnosed as a strain; an ace bandage was applied. R. at 166, 170. A December 1964 SMR reported, on examina-

tion, a history of no arthritis and no "bone, joint, or other deformity". R. at 109. A December 1966 SMR noted that he had experienced right shoulder and "some back pain", with full range of motion and no tenderness. R. at 202. A January 1967 SMR stated that the veteran had fallen about a month before and experienced pain in the right ankle, scapular shoulder, and upper arm. R. at 203. An x-ray of his cervical spine was negative. The impression was "post[-]traumatic musculoskeletal pain". *Ibid.* There was no reference to back pain.

A September 1967 SMR noted that the "[m]iddle part of [the veteran's] back aches". R. at 211. A February 1968 SMR stated that he had complaints of "head and back pain lasting for short periods of time to 12 or 14 [hours]", that the "back pain [was] continuous with or without head pain", and that he had injured his back in December 1966 from a fall. R. at 211–12. The backache was described as being a "dull ache between shoulder blade[s]". R. at 212. An examination of the back revealed "[n]o palpable tenderness" and full range of motion. The impression was myositis. *Ibid.*

A February 1970 SMR reported that the veteran had complained of "pains in back [and] chest due to being 'beat-up' by Tacoma police". R. at 217. The impression was "multiple blunt traumatic injuries". *Ibid.* A June 1970 SMR stated that he had complained of "[b]ack pain since swimming—1 w[ee]k ago." R. at 218. July 1972 and April 1973 SMRs showed that the veteran had pain and was treated for his right ankle, and that x-rays had revealed that the ankle had been fractured in July 1972. R. at 187, 188, 194, 222, 226, 229. A February 1972 SMR noted that he "twisted ankle while playing ball". R. at 222, 226. The impression was "contusion" (R. at 222) and "sprained r[ight] ankle" (R. at 226). In April 1973, ankle pain was noted. R. at 229.

The veteran's SMRs also included reports of right-hand pain and a fracture. R. at 87, 115, 116, 193, 200, 206, 213, 215. First were entries for right-hand pain in July and September 1955. R. at 87. A September 1958 SMR stated that the veteran had injured his right hand when he "slammed car door" on

it, and that he had received a laceration. R. at 114–15. An x-ray revealed no evidence of fracture. R. at 116. A May 1966 SMR reported that the veteran had pain in his wrist for five months. R. at 200. An April 1967 SMR noted that a hand x-ray showed a "poss[ible] fracture". R. at 206. An April 1968 SMR reported that the veteran had injured his right hand "when he fell while drinking", and noted that an x-ray showed a fracture. R. at 213, 215. A February 1972 x-ray report of the right hand "show[ed] a deformity ... indicative of a healed old fracture". No new fractures were noted. R. at 193.

An Air Force retirement examination SMR from August 1973 reported no abnormalities (including as to his "spine [and] other musculoskeletal" parts) as part of a clinical evaluation. R. at 236. An examining physician's notes referred to a fractured right foot and stated that the veteran had "denie[d] family history of diabetes or psychosis ... and all other significant medical or surgical history". R. at 237, 239. At that time, the veteran reported that he felt that he was "in excellent health," and indicated that he never had, and did not then have, arthritis, "bone, joint or other deformity", or "recurrent back pain". R. at 238.

A December 1978 medical record from a private physician, David Shaw, M.D., an orthopedic surgeon, in Salem, Oregon, reported that the veteran had been "having back problems in 1966 when he fell as he came down a maintenance stand, sliding backward down the steps" and that he "did not seek immediate medical attention". R. at 287. The report noted that he was a car mechanic and that he found "that in certain positions, he ha[d] pain in his back and neck ... with occasional headaches". *Ibid.* The report stated that he "obviously" had a "left dorsolumbar scoliosis" which is "mild", that he had "a full range of spinal movements" and that he had tenderness in the dorsolumbar region of his spine. R. at 287–88.

A December 1981 medical record from a private physician, Michael Weinstein, M.D., at Kaiser Permanente in Salem, Oregon (Kaiser), stated that the veteran was seen for back pain. The impression was "[m]uscle strain of the back". R. at 319. A July 1982 Kaiser medical record noted that the veteran had injured his right shoulder playing football. R. at 320. A December 1982 Kaiser record stated that he was seen for severe back pain after "apparently [being] involved in an arrest by the police last night, [and having] severely wrenched his back". R. at 321. The impression was "acute musculoskeletal strain". *Ibid.* A February 1983 Kaiser examination report noted that "palpation of the lower back reveal[ed] ... spasm on the right side of the spine" and tenderness. R. at 322.

A September 1984 letter from a private neurological surgeon stated that the veteran had been examined because of complaints of migraine headaches. R. at 332. Past history revealed that the veteran "suffers from a back injury". Examination of the lumbar spine showed that "[m]otions [were] normal". R. at 333. The letter noted that he "ha[d] a normal examination today". *Ibid.* A January 1986 Kaiser record stated that the veteran was seen for back pain; it stated the following: "The [veteran] has had a long term back injury of the posterior thoracic area. It has been bothering him again recently. He thinks that this is in part related to difficulty with walking on the right foot and therefore he walks with an odd gait." R. at 326. The veteran was found to have "definite muscle spasms" and tenderness.

A January 1987 Kaiser record entry reported that the veteran complained of pain in both feet and of occasional swelling. *Ibid.* It was "suspect[ed]" to be an "orthopedic problem". *Ibid.*

In January 1987, the veteran filed a claim with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) seeking service connection for, inter alia, "back condition", "arthritis", "and any and all disabilities of record". R. at 274–77. On the VA form, he stated that he had received treatment for his back in February 1967, and for his arthritis in 1966. R. at 275. A June 1987 medical record from a private physician who had seen the veteran for his complaints of headaches, noted that he had experienced "some problems with his back

since a fall in 1966 when he was in Vietnam". R. at 254.

A November 1987 entry in Dr. Shaw's records noted that three or four weeks before, the veteran, after driving his van, had noticed "a sudden onset of neck and back pain" which had gradually worsened. R. at 289. An examination reportedly showed that "the thoracic spine has a mild lower thoracic and thoracolumbar kyphosis" with "moderate limitation of movement in the lumbar spine" and that his "spine is tender from the mid thoracic to the mid lumbar spinous processes". *Ibid.* (Kyphosis is "abnormal backward curvature of the spine", WEBSTER's at 369.) The report further stated that x-rays of his dorsal and lumbar spine from 1984 showed "extensive proliferative osteoarthropathy consistent with Forestier's disease". R. at 289. (Forestier's disease is "hyperostosis of the anterolateral vertebral column, especially in the thoracic region"; hyperostosis is the enlargement or overgrowth of bone, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 485, 796, 800 (1988).) Also noted was "some squaring of the vertebrae to suggest possible ankylosing spondylitis too". (Osteoarthropathy is a disease of joints or bones; ankylosing spondylitis is rheumatoid arthritis of the spine, WEBSTER's at 501, 36.) The diagnosis was "[o]steoarthritis of the thoracic spine with costovertebral arthritis". R. at 290.

A subsequent November 1987 entry in Dr. Shaw's records stated that the back symptoms had increased with physical therapy. *Ibid.* A December 1987 entry reported that a "bone scan was essentially negative but he does have some arthritis in the right mid clavicular joint". *Ibid.* Back pain and tenderness were noted. A December 1987 x-ray report revealed the following: "Normal limited bone scan appearances, apart from right sternoclavicular joint arthritis. There is no ankylosing spondylitic nor other inflammatory nor neoplastic thoracic spine causes for the pain." R. at 334. A February 1988 entry noted that an MRI did not show "any lesion to explain the severe thoracic pain he is having". *Ibid.*

In March 1988, the VARO denied service connection for (1) back condition, (2) headaches, (3) hearing loss, (4) ringing in ears, (5) arthritis, (6) hypertension, and (7) "status post CVA [cerebrovascular accident]". R. at 295–96. The RO noted that there "were no specific findings and no specific diagnosis of a chronic back disability"; that there were "no complaint[s] of back problems in the last four years of service"; that the "discharge exam shows the spine and musculoskeletal system normal"; and that there was "no evidence of treatment for back problems until 1978, more than four years after service and the veteran had been working as a mechanic". R. at 295. The RO also determined that "there is no evidence of . . . arthritis within a year of discharge". *Ibid.*

In September 1988, the veteran filed a Notice of Disagreement (NOD) as to, inter alia, his back strain and arthritis. R. at 297. That same month, a Statement of the Case (SOC) was sent to him by the RO. R. at 298–301. In October 1989, he filed a statement that he "wished to reopen [his] service-connect[ion] claims for . . . [, inter alia,] back conditions . . . [and] arthritis". R. at 343–44.

In June 1989, the Social Security Administration (SSA) awarded the veteran disability insurance benefits. In its decision, the SSA stated that he "has been under a disability within the meaning of the Social Security Act continuously from his June 5, 1987, stroke through the date of this decision. . . ." R. at 311, 313. In November 1987, the veteran had applied for disability insurance benefits from the SSA, and asserted an inability to work since June 1987 "due to complications of a stroke and a heart condition". R. at 307, 313.

In January 1990, the RO denied reopening of those claims, concluding that "[t]he evidence is new and material but does not establish a new factual basis for a grant of S[ervice] C[onnection]". R. at 345. In April 1990, the veteran submitted additional records, including records from the Naval Hospital in Lemoore, California. A June 1974 entry in those records reported the following: "C[omplained] o[f] mid[-]back pain, bilateral shoulder pain, . . . numbness down right arm, [illegible] fingers, with heavy use [illegible] farm equipment operator, and truck driver. . . . Has had problem for 9 years, states he injured back in Vietnam." R. at 348. An

examination report revealed "tender paraspinally" T10–L1, some limitation of extension, mild scoliosis to left, full range of motion in shoulders. R. at 349, 380. He also submitted a May 1976 x-ray report from that Naval Hospital which showed "some joint space narrowing with mild hypertrophic changes" and contained an impression of "[d]egenerative changes involving the right foot" (R. at 358); a November 1977 VA x-ray report revealing the following impression as to his spine: "Demineralization, degenerative joint disease and slight to moderate rotoscoliosis of the lower dorsal and lumbar spine" (R. at 359); and reports, described above, which were already in the record.

In November 1990, the RO confirmed the prior January 1990 RO decision. R. at 378. This document is essentially illegible in other respects. A January 1991 VA letter informed the veteran that his claims had been denied because "the evidence is new and material but does not provide a new factual basis for service connection for back condition, [and] arthritis". R. at 380. In February 1991, the veteran filed an NOD. R. at 382. Later that month he was sent an SOC. R. at 384–89.

In May 1991, he filed a VA Form 1–9, Appeal to the BVA (1–9 Appeal), as to, inter alia, his claims of service connection for his back condition and arthritis. R. at 390. He also asserted the following with respect to his wrists:

> In 1966 I went to the hospital at Travis AFB because of severe pain in my wrist, elbows and shoulders. I started having the pains first in my wrist. They would ache and burn terribly. This went on for a few months; then it would transfer to an elbow or shoulder; maybe all of them.

R. at 391. He further stated the following with respect to his ankle: "The ankle is still giving me problems today. It stiffens up, locks up, swells, and prevents me from too much walking." R. at 392. He also explained: "In 1970 I was assigned to the aircraft maintenance school as an aircraft maintenance instructor. The duty was classroom instruction. Therefore, I did very little physical activities on the job." *Ibid.*

In the January 9, 1992, BVA decision here on appeal, the Board found that, as to the claim of entitlement to service connection for the veteran's right ankle, the matter was not properly before it for appellate review, and "referred [that matter] to the attention of the [RO] for further consideration". R. at 4. As to the back and arthritis service-connection claims, the Board found that no new and material evidence to reopen those claims had been presented or secured since the time of the March 1988 final RO decision and did not reopen the claims. R. at 5–6, 8.

## II. Analysis

Service connection for purposes of VA disability compensation will be awarded for any disease or injury that was incurred during or aggravated by the veteran's active service or, inter alia, for a chronic disease that was initially manifested to a degree of 10% or more within an applicable presumption period. *See* 38 U.S.C. §§ 1110, 1112(a); 38 C.F.R. §§ 3.303(a), (b), 3.307(a) (1994). Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b). Section 3.303(b) expressly provides:

> With chronic disease shown as such in service (or within the presumpt[ion] period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes.... For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established ..., there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumpti[on] period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may

be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim.

 Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C. §§ 7104(b), 7105(c); *Suttmann v. Brown,* 5 Vet.App. 127, 135 (1993). On claims to reopen previously and finally disallowed claims, the BVA must conduct a "two-step" analysis. *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). The Board must first determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material" when viewed in the context of all the evidence. *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *See Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 215 (1991).

 A Board determination as to whether evidence is "new and material" is a question of law subject to de novo review in this Court under 38 U.S.C. § 7261(a)(1). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin, supra.*

The Court has synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin, supra,* . . . must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox (Billy) v. Brown,* 5 Vet.App. 95, 98 (1993); *see also Justus v. Principi,* 3 Vet.App. 510, 513 (1992) (in determining whether evidence is new and material, "the credibility of the evidence is to be presumed"). Lay assertions of medical causation cannot suffice to reopen a claim under 38 U.S.C. § 5108. *See Moray v. Brown,* 5 Vet.App. 211, 214 (1993). Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a); where the determinative issue does not require medical expertise, lay testimony may suffice by itself. *See Lathan v. Brown,* 7 Vet.App. 359, 365 (1995) (citing *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993)); *Magana v. Brown,* 7 Vet.App. 224, 227 (1994); *see also Moray, supra* (applying this rule of law to claims to reopen).

### A. Service Connection for Back Condition and Arthritis

The Court holds that new and material evidence has not been presented or secured so as to justify reopening the veteran's claims, previously and finally denied by the RO in March 1988, for service connection for a back disorder and arthritis. Pertinent evidence received since March 1988 consists of the following: (1) VA medical records from the Naval Hospital in Lemoore, California, including a June 1974 entry reporting that the veteran had complained of mid-back pain, bilateral shoulder pain, and numbness down right arm, and noting that he was a farm-equipment operator and truck driver and that he "[h]as had [a] problem for 9 years[;] states he injured back in Vietnam"; and an examination revealing "tender paraspinally" T10–L1, some limitation of extension, mild scoliosis to left, full range of motion in shoulders (R. at 348–49, 380); (2) a November 1977 x-ray report from the Naval Hospital which revealed the following impression as to the spine: "Demineralization, degenerative joint disease and slight to moderate rotoscoliosis of the lower dorsal and lumbar spine" (R. at 359); (3) December 1978, November 1987, December 1987, and February 1988 private medical records from Dr. Shaw (R. at 354, 365–67, 369); (4) the veteran's 1–9 Appeal statement that in 1970 he had been "assigned to the aircraft maintenance school as an aircraft maintenance instructor", an assignment which consisted of classroom in-

struction, and that he, therefore, "did very little physical activities on the job" (R. at 392); and (5) the June 1989 SSA decision awarding the veteran disability insurance benefits.

■ The appellant argues that the "new evidence is material and not cumulative because the evidence shows symptomatology to establish service connection for [his] back problem and arthritis and would have affected the outcome." Br. at 16. However, the veteran's back condition is not a chronic disease subject to presumptive service connection. *See* 38 U.S.C. §§ 1101(3), 1112; 38 C.F.R. §§ 3.307, 3.308(a), 3.309(a) (1994). To establish service connection for this kind of condition, a showing of continuity of symptomatology after discharge is required, *see* 38 C.F.R. § 3.303(b); *Sanchez v. Derwinski*, 2 Vet.App. 330, 333 (1992); *Ivey v. Derwinski*, 2 Vet.App. 320, 323 (1992); *Wilson v. Derwinski*, 2 Vet.App. 16, 19 (1991), unless there is medical evidence that the inservice condition, although not diagnosed as such in service, was "chronic", *see* 38 C.F.R. § 3.303(b), or there is evidence that connects the current condition to the inservice condition, *see* 38 C.F.R. § 3.303(d) (1994).

■■ The Court holds that the records in item (3) above are not new because they are duplicate copies of records that were previously before the RO in 1988. *See Smith (Albert) v. Derwinski*, 3 Vet.App. 205, 207 (1992). The Court holds that items (1) and (2) are new because they show treatment of back pain within a year after discharge and were not merely cumulative of other evidence in the record. Item (4) is also new because that proffered explanation was not previously of record. Although the Board incorrectly found the above items to be not new, this error was not prejudicial to the veteran because this Court holds that they were not material. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Yabut v. Brown*, 6 Vet.App. 79, 83 (1993); *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991). Items (1) and (2), while new, are not material evidence because they are not relevant to and probative of the issue at hand—whether there was continuity of symptomatology during and after service, up to the time when the claim was filed. Although item (4) is new, it also is not material evidence because it does not show continuity of symptomatology. *See Cornele v. Brown*, 6 Vet.App. 59, 62 (1993) (finding no continuity of symptomatology where the evidence, consisting of physician's report, although new, was not material because it was not probative of the issue whether veteran's head and neck injuries were related to accident which occurred during service, and no other report showed head or neck injuries during thirty-year period after accident); *Colvin, supra.*

■ As to item (5) above, the appellant argues that the Board failed to consider the findings of the SSA. In its decision, the SSA concluded that the veteran "has been under a disability within the meaning of the Social Security Act continuously from his June 5, 1987[,] stroke through the date of this decision...." R. at 311. The SSA found that the "medical evidence establishes that the claimant has severe degenerative joint disease and status post cerebrovascular with dizziness, fatigue, memory loss, and difficulty concentrating...." R. at 312. The Court holds that the June 1989 SSA decision, although new, is not material because it is based primarily upon disabilities other than the veteran's back condition and arthritis and because the findings of the SSA do not support a showing of continuity of symptomatology. The Court finds that the SSA's notation that the "medical evidence shows that the claimant has a twenty-year history of back problems with x-rays showing scoliosis and degenerative joint disease" (R. at 310) fails to identify what evidence shows such "a twenty-year history". The notation is followed by a discussion of the evidence SSA relied upon in reaching its decision to award benefits. It referred to (1) the records of Dr. Shaw who treated the veteran since 1978; (2) the records of Dr. Richard Schwartz who treated the veteran after his stroke in 1987, and showed that the veteran had experienced left-sided weakness, lethargy, headaches, dizziness, fatigue, depression, and difficulty in maintaining balance; (3) the records of Dr. Alan Brooks who evaluated the veteran in August 1988, and opined that the veteran's history was compatible with a history of a

brain-stem ischemic event and that the symptoms were not uncommon after a stroke; (4) the records of Dr. Ronald Glaus whose evaluation in September 1988 showed impairment of brain functions and included a diagnosis of multi-infarct dementia with depression; and (5) the records of Dr. Walter Whitman who had continuously treated the veteran since 1985. The latter records included an October 1987 summary that the veteran "was in relatively good health until his 1987 stroke" and a final January 1989 report stating that the veteran would continue to be unable to work because of his dizziness, balance disturbance, memory loss, and inability to concentrate.

As noted in part I, above, the Court has held that when the question before the Board is one of medical etiology or causation, medical evidence is required to make a claim well grounded. *See Lathan, Magana, Grottveit,* all *supra.* Here, the question of continuity of symptomatology is not a matter of medical etiology or causation, but rather whether the veteran manifested symptoms during and after service, up to the time when his claim was filed in January 1987. Under *Justus* and *Cox,* both *supra,* the credibility of the evidence is to be presumed for purposes of the decision whether or not to reopen. However, where the SSA states that its finding (of a "twenty-year history of back problems") is based on "medical evidence" and the medical evidence shows no such history, the SSA statement cannot be presumed to be credible when on its face it conflicts with the lack of substantiation for it in the very medical evidence on which it is expressly premised. *Cf. Duran v. Brown,* 7 Vet.App. 216, 220 (1994) (*Justus* credibility rule does not apply to newly submitted evidence which is inherently false or untrue; *"Justis* does not require the Secretary to consider the patently incredible to be credible"); *Kightly v. Brown,* 6 Vet.App. 200, 205–06 (1994) (finding that presumption of credibility of evidence did not arise as to medical opinion that veteran's disability was incurred in service because it was based on an inaccurate history, one which failed to acknowledge an injury well-documented in record, and hence holding such evidence not "material"); *Reonal v. Brown,* 5 Vet.App. 458, 460–61 (1993) (find-ing that presumption of credibility did not arise because physician's opinion was based upon "an inaccurate factual premise" and thus had "no probative value" since it relied upon veteran's "account of his medical history and service background, recitations which had already been *rejected "* by RO, and hence holding opinion not to be "material" evidence); *Robinette v. Brown,* —— Vet.App. ——, ——, No. 93–985, slip op. at 12, 1994 WL 495078 (Sept. 12, 1994), *mot. for recons. granted on other grounds* (Oct. 21, 1994) (holding that "the connection between the layman's account, filtered as it was through a layman's sensibilities, of what a doctor purportedly said is simply too attenuated and inherently unreliable to constitute 'medical' evidence"). Accordingly, the Court holds that the medical records which supported the SSA's determination that the veteran was under a disability under the Social Security Act continuously since his June 1987 stroke do not support a finding of continuity of symptomatology for a back condition over "a twenty-year history", and that the SSA statement thus does not constitute "material" evidence because there is no reasonable possibility that, "when viewed in the context of all the evidence, both new and old, [it] would change the outcome". *Cox,* 5 Vet.App. at 98.

As to the medical evidence (which the Board did not discuss) underlying the SSA's determination, the Court holds that it either constituted duplicate copies of records previously before the RO in 1988 (the November 1987 records of Dr. Shaw) and thus was not new or, although new, did not show continuity of symptomatology for the veteran's back condition (the December 1988 physical capabilities assessment form of Dr. Shaw) or was irrelevant because the evidence related to treatment and examination of the veteran with respect to his stroke (the June 1987, January 1988, and March 1988 records of Dr. Richard Schwartz; the August 1988 record of Dr. Alan Brooks; the September 1988 record of Dr. Ronald Glaus; and the October 1987, July 1988, and January 1989 records of Dr. Walter Whitman). R. at 310–11, 319–42. Accordingly, any error made by the Board in failing to consider the SSA June 1989 determination and underlying evidence

was not prejudicial to the veteran. *See* 38 U.S.C. § 7261(b); *Yabut* and *Godwin,* both *supra.*

 In its decision, the Board found that the "additional evidence shows nothing more than that he was treated for back ... complaints several months after service discharge", and that "such symptoms were attributable to the strenuous employment he held at the time". R. at 8. The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. *See* 38 U.S.C. § 7104(d)(1). The Board must support its medical conclusions on the basis of independent medical evidence in the record or through adequate quotation from recognized treatises; it may not rely on its own unsubstantiated medical judgment. *See Thurber v. Brown,* 5 Vet.App. 119, 122 (1993); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992); *Colvin,* 1 Vet.App. at 175. The Court holds that any error made by the Board in providing its own medical conclusion that the veteran's "symptoms were attributable to the strenuous employment he held at the time", was not prejudicial to the veteran in light of the Court's holding, upon de novo review of all the evidence, that the veteran had not submitted new and material evidence to warrant the reopening of his claim. *See* 38 U.S.C. § 7261(b); *Yabut* and *Godwin,* both *supra.* Furthermore, any error made by the Board in failing to take into account that "the credibility of the evidence is to be presumed" for purposes of reopening, *see Justus, supra,* was also not prejudicial to the veteran in light of the Court's holding on its de novo review.

 As to arthritis, the November 1977 report (item (2)) is not material because it does not address the question whether the veteran's current arthritis had its inception during service. It does not link the current arthritis to the inservice symptoms and fall. Therefore, it is not sufficient to reopen his arthritis claim.

### B. Service Connection for Right–Ankle Claim

The Board determined that "the issue of service connection for residuals of right-ankle

fracture has been raised by the veteran", and that the matter was not properly before it for appellate review. R. at 4. The Board stated that the matter "is referred to the attention of the [AOJ] for further consideration." *Ibid.* The appellant contends that, because he raised the issue in his 1–9 Appeal and the SMRs reasonably show service connection, the Board erred in "referring" the issue to the RO. He contends that the Board should have "remanded" the claim, giving specific and formal direction to the RO. Brief (Br.) at 21–22; Reply Br. at 4–5. He also argues that the Board was required to remand the matter pursuant to 38 C.F.R. § 19.182 (1991) and to direct that it be given expedited treatment by the RO. Reply Br. at 5 ("convey to the AOJ [a] sense of ... urgency in 'considering' the claim" so as to avoid "unwarranted and unnecessary delay in the adjudication of the claim"). (The appellant states that § 19.182 is currently "new [s]ection 19.38". Although § ·19.182(c), with revisions not relevant here, does now form part of 38 C.F.R. § 19.38 (1994), § 19.182(b) now forms part of 38 C.F.R. § 19.31 (1994), and § 19.182(a) was superseded by 57 Fed.Reg. 4105 (1992) and is currently codified at 38 C.F.R. § 19.9 (1994).)

 When the Board referred this issue to the RO in January 1992, § 19.182 was in effect. Section 19.182(a) provides:

When, during the course of review, it is determined that further evidence or clarification of the evidence or correction of a procedural defect is essential for a proper ***appellate*** decision, the section of the Board shall remand the case to the agency of original jurisdiction, specifying the further development to be undertaken.

38 C.F.R. § 19.182(a) (emphasis added). This regulatory provision is invoked when the record is inadequate and the BVA remands the case to the RO to obtain more complete information (e.g., medical) and to develop the record further, or for consideration of later-developed evidence. *See Littke v. Derwinski,* 1 Vet.App. 90, 92 (1990). This provision requires that when the BVA reviews the evidence and makes a determina-

tion as to the adequacy of the record, remand is mandatory if the BVA finds that the record before it is inadequate. *Littke,* 1 Vet. App. at 93; *see Austin v. Brown,* 6 Vet.App. 547, 553 (1994) (recognizing that 38 C.F.R. § 19.9 remands to the RO are "mandatory when the BVA determines that further development of the record is essential").

■ The Court holds that the Board did not err in referring the right-ankle claim to the RO without additional specific instructions because at the time the Board referred that issue § 19.182(a) was not applicable to it since that issue was not in appellate status. *See Hamilton v. Brown,* 39 F.3d 1574, 1585 (Fed.Cir.1994), *aff'g* 4 Vet.App. 528 (1993) (construing § 19.182 to apply to the appellate-review function of the Board and concluding that the references to AOJ in § 19.182 "signify that a remanded case is *returned* to the unit that made the *initial* determination in connection with the claim" and "do *not* signify that the unit, in disposing of a claim on remand, is functioning as an AOJ" (emphasis added)); *cf.* 38 C.F.R. § 20.714(a)(2) (1994) (requiring transcripts to be prepared from audiotapes of BVA hearings when testimony and/or argument pertains to "an issue which is not in appellate status [and] which is to be *referred* to the [AOJ] for consideration" or pertains to "an issue which is to be *remanded* to the [AOJ] for further development" (emphasis added)). A claim for service connection for a right-ankle condition had not yet been filed with, nor initially examined or adjudicated by, the RO. The first time it was raised was on appeal to the Board, in the 1–9 Appeal. The Board complied with the requirements of *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991), when it liberally construed the 1–9 Appeal as including a claim for service connection for the veteran's right ankle, which he had fractured in service, and recognized that the issue had been reasonably raised and needed to be adjudicated.

In *Bernard v. Brown,* 4 Vet.App. 384, 391 (1993), the Court held that "the Board's jurisdiction is limited to deciding questions in 'appeals' of 'a matter which under section [511(a) ] of this title is subject to decision by the Secretary' and which has been the sub-ject of a decision by an AOJ." *Id.* at 391; *see* 38 U.S.C. §§ 501, 7104(d). In so holding, the Court noted that section 7105 of title 38, U.S.Code, establishes "very specific, sequential, procedural steps that must be carried out by a claimant and the RO or other [AOJ (such as a VA health-care facility) ] ... before a claimant may secure 'appellate review' by the BVA". *Bernard,* 4 Vet.App. at 390; 38 C.F.R. §§ 20.200, 20.202 (1994).

In *Bernard,* the Court concluded as follows:

> [T]he question whether the Board in this case lacked *jurisdiction* to adjudicate the merits of the veteran's claim for service-connected disability compensation turns upon whether that determination itself involves a "matter", as that term is used in section 7104(a), separate from the determination of whether new and material evidence to reopen had been submitted, or, alternatively, whether those two determinations were merely "questions" in a single "matter". *If the two are separate "matters", then the Board would lack jurisdiction to address the merits of the veteran's benefits claim because the RO had not rendered a decision on that matter that could have been appealed to the Board.* However, if they are merely different questions within a single "matter", then the Board would have jurisdiction to adjudicate the merits of the claim because the veteran had properly appealed to the Board from an RO decision on that "matter".

*Bernard,* 4 Vet.App. at 391 (second emphasis added). The Court there determined that "the question whether a claimant has submitted new and material evidence to reopen a claim and the question whether, upon such reopening, a claimant is entitled to VA benefits, are questions relating to a single 'matter' for purposes of the Board's jurisdiction under 38 U.S.C.[ ] § 7104(a)", *ibid.,* and that the two questions are "components of a single claim for benefits" and "relate to a single 'decision by the Secretary under a law that affects the provision of benefits by the Secretary', as referred to in section 511(a)", *id.* at 392. The Court held that the Board had "appellate jurisdiction to review the veteran's

claim of entitlement to benefits under section 1110" and had authority "to decide all questions presented on the record before it that were necessary to its decision on that matter". *Id.* at 392.

Unlike the two questions involved in a single "matter" in *Bernard,* in the case at bar the right-ankle claim was not a component of the back-condition and arthritis claims, and those claims were thus not components of a single claim for benefits under 38 U.S.C. § 1110. Rather, each was a separate "matter". Furthermore, the right-ankle claim had not been the subject of a decision by an AOJ (that could have been appealed to the Board). The Board's referral of the claim to the RO in the present case enables the RO, as an AOJ and *not* as part of the appellate process, to make the "initial review or determination" referred to in 38 U.S.C. § 7105(b)(1), as to that issue. *See Hamilton, supra.* The appellant has made no showing that would cause the Court to agree with his contention that the Board was in some way obligated to direct that the RO expedite its adjudication of his "referred" right-ankle claim, which had not been adjudicated by the RO and which was raised for the first time on appeal to the Board. *Cf.* Veterans' Benefits Improvements Act of 1994 (VBIA), Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (as to "expeditious treatment" for claims "remanded" by BVA or the Court). Accordingly, the Court holds that the Board did not err in referring the matter to the RO because the Board did not have appellate jurisdiction to review the veteran's claim of entitlement to benefits under section 1110 for the right-ankle claim and lacked jurisdiction to adjudicate the merits of that claim.

### C. Service Connection for Wrist(s) and Hand

Both parties agree that the appellant's claims of service connection for disability of his wrist or wrists and hand should be remanded to the Board. Appellant's Br. at 21–22; Secretary's Br. at 10–11. The Secretary concedes that "the issue of service connection for disability of wrists and hand was raised in [the veteran's 1–9 Appeal] ... sufficiently that the Board should have inferred [the existence of] the issue and taken some kind of action on it". Secretary's Br. at 10.

The appellant's May 1991 1–9 Appeal stated the following with respect to his wrist(s):

> In 1966 I went to the hospital at Travis AFB because of severe pain in my wrist, elbows and shoulders. I started having the pains first in my wrist. They would ache and burn terribly. This went on for a few months; then it would transfer to an elbow or shoulder; maybe all of them.

R. at 391. In its January 1992 decision, the BVA denied service connection for, inter alia, back condition and arthritis, but did not address, or mention, the issue of service connection for disability of his wrist(s) and hand. (The Court notes that it is difficult to determine, from the appellant's contentions, for which hand and wrist(s) he wishes to seek service connection. In his brief, the appellant contends that residuals of both wrists should be considered; however, he refers to SMRs that show injury to his right hand and wrist (R. at 83, 87, 114, 188, 189, 200, 359), and in his 1–9 Appeal he refers only to "wrist" without identifying which one.) Upon receipt of a 1–9 Appeal, the BVA is required to address all issues which are reasonably raised from a liberal reading of an appellant's substantive appeal. *See Chisem v. Brown,* 4 Vet.App. 169, 176 (1993); *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991). The Court holds that the language used in the veteran's 1–9 Appeal reasonably raised claims of service connection for these disabilities and that the Board was required to address them. These claims will thus be remanded to the Board.

The Court notes that the wrist(s) and hand claims, raised for the first time in the 1–9 Appeal, as with the right-ankle claim, have not yet been adjudicated by the RO and must, for the reasons stated in part II.B., above, be referred to the RO for initial review and adjudication there. However, unlike the situation as to the right-ankle claim, as to which the Board made no error, the Board did err in not referring the wrist(s) and hand claims to the RO.

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court affirms in part the January 9, 1992, BVA decision and in part vacates that decision, to the extent that it did not address the issues of service connection for disabilities of the veteran's wrist(s) and hand, and remands these matters for expeditious treatment (including referral to the RO) in accordance with this opinion and VBIA § 302. As to the Board's denial of the claims for service connection for a back condition and arthritis and as to the Board's referral of the right-ankle claim to the RO, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C. §§ 5108, 7105(c), 7104(d)(1), 7252, and 7261 and the analysis in *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). On remand, "the appellant will be free to submit additional evidence and argument" on the remanded claims. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.