Citation Nr: 1513897 
Decision Date: 03/11/15 Archive Date: 04/03/15

DOCKET NO. 14-01 575 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUES


1. Entitlement to service connection for the cause of the Veteran's death. 

2. Basic eligibility for a permanent and total rating for pension purposes with special monthly pension, based on the need for the aid and attendance of another person, for accrued benefits purposes/on the basis of substitution. 


REPRESENTATION

Appellant represented by: P.M.D., Attorney



WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

G. Jivens-McRae, Counsel


INTRODUCTION


The Veteran served on active duty from December 1953 to December 1955. He also had numerous years of Reserve duty. He died in January 2009. The appellant is his surviving spouse and, as an attorney, is acting as her own representative. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2010 rating decision of the Philadelphia, Pennsylvania, Department of Veterans Affairs (VA) Regional Office (RO), which denied issues on appeal. Jurisdiction now lies with the Louisville, Kentucky, RO. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of entitlement to burial benefits, to include a plot or interment allowance, was denied by the RO in April 2009. A letter dated April 2, 2009, advised the appellant of the decision and her appellate rights.

The issue of basic eligibility for nonservice-connected pension benefits with special monthly pension due to the need for the aid and attendance of another person, for purposes of accrued benefits, is being remanded and is addressed in the REMAND portion of the decision below. VA will notify the appellant if additional action is required on her part.


FINDINGS OF FACT

1. The certificate of death indicates that the Veteran died in January 2009 from failure to thrive due to or as a consequence of metastatic prostate cancer. 

2. At the time of the Veteran's death, service connection had not been established for any disability. 

3. The probative evidence of record is in equipoise as to whether the Veteran's prostate cancer was causally related to in-service exposure to contaminated drinking water at Camp Lejeune and ultimately contributed to his death. 


CONCLUSION OF LAW

The criteria for entitlement to service connection for the cause of the Veteran's death have been met. 38 U.S.C.A. §§ 1101, 1110, 1310, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310, 3.312 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). In this case, the Board is granting in full the benefit of entitlement to service connection for the cause of the Veteran's death. Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist as to this issue, such error was harmless and need not be further considered. 

In order to establish service connection for the cause of the Veteran's death, applicable law requires that the evidence show that a disability incurred in or aggravated by service either caused or contributed substantially or materially to death. For a service-connected disability to be the cause of death it must singly, or with some other condition, be the immediate or underlying cause, or else be etiologically related. For a service-connected disability to constitute a contributory cause, it is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 U.S.C.A. § 1310;
38 C.F.R. § 3.312 (2014). 

In order to constitute the principal cause of death, the service-connected disability must be one of the immediate or underlying causes of death, or be etiologically related to the cause of death. 38 C.F.R. § 3.312(b). A contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1). 

In the alternative, service connection for the cause of death may be warranted where the evidence indicates that the cause of the Veteran's death should have been service connected. That is to say that, to establish service connection for a particular disability found to have caused his death, the evidence must show that the disability resulted from disease or injury which was incurred in or aggravated by service. 38 U.S.C.A. §§ 1110; 38 C.F.R. § 3.303, 3.304. 

The evidence must show: (1) the existence of a disability at the time of the Veteran's death; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995). 

According to his death certificate, the primary cause of the Veteran's death was failure to thrive due to or as a consequence of metastatic prostate cancer. At the time of his death, the Veteran was not service connected for any disability. 

It is the appellant's primary contention that the Veteran's death was the result of prostate cancer that was caused by his exposure to contaminated water at Camp Lejeune while in service. 

VA acknowledges that there was contamination of the ground water at Camp Lejeune from 1953 to 1987. Specifically, in the early 1980s, it was discovered that two on-base water-supply systems were contaminated with the volatile organic compounds (VOCs) trichloroethylene (TCE), a metal degreaser, and perchloroethylene (PCE), a dry cleaning agent. The contaminated wells supplying the water systems were identified and shut down by February 1985. 

In 2008, the National Academy of Sciences ' National Research Council (NRC) and the Agency for Toxic Substances and Disease Registry (ATSDR) initiated studies. NRC undertook a study to assess the potential long-term health effects for individuals who served at Camp Lejeune during the period of water contamination. In the resulting report, Contaminated Water Supplies at Camp Lejeune, Assessing Potential Health Effects (June 2009), NRC reviewed previous work done by ATSDR, including computerized water flow modeling, and concluded that additional studies may not produce definitive results because of the difficulties inherent in attempting to reconstruct past events and determine the amount of exposure experienced by any given individual. To address potential long-term health effects, NRC focused on diseases associated with TCE, PCE, and other VOCs. Based on analyses of scientific studies involving these chemicals, NRC provided an assessment of the potential association between certain diseases and exposure to the chemical contaminants. 

The NRC analysis utilized categories of potential disease "health outcomes." The categories included: (1) sufficient evidence of a causal relationship; (2) sufficient evidence of an association; (3) limited/suggestive evidence of an association; (4) inadequate/insufficient evidence to determine whether an association exists; and, (5) limited suggestive evidence of no association. The analysis found that no diseases fell into the categories of sufficient evidence of a causal relationship or sufficient evidence of an association with the chemical contaminants. However, 14 diseases were placed into the category of limited/suggestive evidence of an association. A number of diseases were also identified that fell into the category of inadequate/insufficient evidence to determine whether an association exists. NRC indicated that placement of diseases in these categories was based primarily on studies of highly exposed industrial workers, where the amount and duration of toxic chemical exposure greatly exceeded that experienced by individuals at Camp Lejeune. The specific diseases with limited/suggestive evidence of an association 
include: esophageal cancer; lung cancer; breast cancer; bladder cancer; kidney cancer; adult leukemia; multiple myeloma; myelodysplasic syndromes; renal toxicity; hepatic steatosis; female infertility miscarriage, with exposure during pregnancy; scleroderma; and neurobehavioral effects. Manifestation of any of these diseases is considered to be sufficient to initiate a VA medical examination and request an opinion regarding its relationship to Camp Lejeune service. However, this is not an exclusive list. Medical evidence provided by a veteran indicating that some other disease may be related to the known water contaminants could also be sufficient to initiate a VA examination. 

 It is important to note that, to date, no definitive scientific studies have provided conclusive evidence that an individual who served at Camp Lejeune during the period of water contamination developed a particular disease as a result of that service. As a result, there are currently no "presumptive" diseases attributed to service at Camp Lejeune by statute, regulation, or VA policy. Accordingly, when VA receives a claim based on chemical exposure at Camp Lejeune, VA first must determine if the veteran was stationed at Camp Lejeune and if so for how long and in what capacity. Here, the evidence establishes that the Veteran was stationed at Camp Lejeune during a portion of his active military service from June 1954 to December 1955, and he returned on at least one occasion during June 1967 for a two week refresher course during active duty for training (ACDUTRA). These dates were related by the appellant during her RO hearing in February 2012 and are verified by the Veteran's service personnel records. 

The next step is to verify, with medical evidence obtained through a VA medical examination or other authoritative medical sources, whether a claimed current disease or disability is at least as likely as not a result of exposure to the chemical compounds present in the water at Camp Lejeune. 

The appellant submitted a September 2012 medical opinion from the Veteran's nephrologist (C.H.C., MD) which indicated that it was his opinion that it was as likely as not that the exposure to toxins at Camp Lejeune via contaminated water contributed to the development or progression of the Veteran's prostate cancer. This positive opinion, however, did not provide a rationale for Dr. C.H.C.'s opinion. 

In August 2013, a VA medical opinion was provided in connection with the appellant's claim. This negative opinion indicated that prostate cancer is a very common cancer in men and had risk factors, with the most important to be age, ethnicity, genetic factors (positive family history), cadmium exposure, and possibly dietary factors. The examiner did not indicate that the Veteran had any of the risk factors of prostate cancer, he just related those risk factors as known to prostate cancer. Additionally, the examiner stated that the NCR 2008 report showed FERC and TCE, two of the contaminants found in Camp Lejeune contaminated water, had a plausible connection to the future development of prostate cancer. The examiner also stated that the studies he cited showed that after substantial occupational exposures for at least 5 years, there may be an increased risk of developing prostate cancer. Other studies, according to the examiner, indicate no increase in risk after workplace exposure. Therefore, according to the examiner, with the possible exception of significant occupational exposure to PERC or TCE for greater than 5 years, there was no scientifically documented link between exposure to these solvents and prostate cancer. These statements were the VA examiner's rationale as to why it was less likely as not that the Veteran's prostate cancer was due to or the result of the Veteran's exposure to Camp Lejeune contaminated water. 

In March 2014, Dr. C.H.C. submitted another opinion on the Veteran's exposure to contaminated water and his development of prostate cancer. Dr. C.H.C. stood by his original medical opinion that it was as likely as not that the Veteran's prostate cancer was due to environmental toxins that were related to Camp Lejeune contaminated drinking water. His rationale was based on studies he had read regarding the toxins found in the contaminated water and their association with the development of prostate cancer. One of the studies specifically linked prostate cancer to firefighters. It is important to note that the Veteran was a firefighter for 5 months while stationed at Camp Lejeune. Another of the studies was co-written by R.C., MD, who testified before Congress regarding toxins at Camp Lejeune. 

Finally, in July 2014, a study was submitted on behalf of the appellant's claim. Although this study was related to veterans and their families who had service at Camp Lejeune between 1975 and 1985, the findings showed that Camp Lejeune veterans had a 73 percent higher death rate due to prostate cancer than the general U.S. population. 

The standard to be met in a service connection case is not that the evidence must be sufficient to definitively establish that the disability at issue is due to service, but rather, sufficient to establish that it is at least as likely as not that the disability is related to service. The term "as likely as not" does not mean "within the realm of medical possibility," but rather that the evidence of record is so evenly divided that, in the examiner's expert opinion, it is as medically sound to find in favor of the proposition as it is to find against it. Such standard has been met in this case. 

The Board is not entirely satisfied with the opinions provided. For instance, Dr. C.H.C.'s initial medical opinion was without rationale. The VA medical opinion discussed risk factors for prostate cancer other than toxins found in contaminated water at Camp Lejeune. However, the examiner did not attribute any of the risk factors for prostate cancer as factors indicative to the Veteran. Dr. C.H.C. held to his medical opinion, and cited to studies that he found to be positive that showed it was as likely as not that the Veteran's prostate cancer was a result of his exposure to contaminated water at Camp Lejeune. Finally, although there was a study provided that showed that the Camp Lejeune veterans had a 73 percent higher rate of death from prostate cancer than the general US population, this study was done relative to Camp Lejeune veterans from 1975 to 1985, and the Veteran served at Camp Lejeune during the 1950's. However, when read as a whole, the private opinion adequately supports a link, while the VA opinion adequately supports the lack of a link. Accordingly, the Board finds that the evidence for and against the Veteran's diagnosis of prostate cancer due to exposure to contaminated water at Camp Lejeune is at least in equipoise. The United States Court of Appeals for Veterans Claims stated that "[b]y requiring only an 'approximate balance of positive and negative evidence' to prove any issue material to a claim for veterans benefits, 38 U.S.C. § 5107(b) , the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding such benefits." Wise v. Shinseki, 26 Vet. App. 517, 526 (2014), citing Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). 

In this case, the appellant has alleged, and the evidence has been found to be in equipoise, that the Veteran's prostate cancer was the result of contaminated drinking water while stationed at Camp Lejeune. As the Veteran's prostate cancer ultimately caused his death, service connection for the cause of the Veteran's death is warranted. 


ORDER

Service connection for the cause of the Veteran's death is granted. 


REMAND

In December 2010, service connection for the cause of the Veteran's death and accrued benefits were denied. The appellant filed an appropriate notice of disagreement (NOD) to the denials in January 2011. Her claim for service connection for the cause of the Veteran's death proceeded and was ultimately the result of a grant in this decision. However, no statement of the case (SOC) regarding the accrued benefits claim has been furnished. As such, this claim must now be remanded to allow the RO to provide the appellant with an appropriate SOC on the issue. Manlincon v. West, 12 Vet. App. 238, 240-41 (1999); see also Godfrey v. Brown, 7 Vet. App. 398, 408-10 (1995); Archbold v. Brown, 9. 124, 130 (1996). 

The agency of original jurisdiction should also consider the inextricably intertwined issue of substitution regarding the pension/special monthly pension claim.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The agency of original jurisdiction should address the matter of whether the appellant has filed a claim of basic eligibility for a permanent and total rating for pension purposes with special monthly pension, based on the need for the aid and attendance of another person, for substitution purposes. Attention is directed to page 8 of the appellant's Application for Dependency and Indemnity Compensation, Death Pension and Accrued Benefits by a Surviving Spouse or Child, VA Form 21-534, received January 22, 2010. All appropriate action should be taken.

2. The appellant must be furnished an SOC for the accrued benefits claim for basic eligibility for a permanent and total rating for pension purposes with special monthly pension, based on the need for the aid and attendance of another person, that addresses all pertinent evidence, laws and regulations relevant to the claim in compliance with the holding in Manlincon v. West as discussed above, and in accordance with 38 C.F.R. § 19.29, unless the matter is resolved by granting the benefits sought, or the withdrawal of the appellant's NOD. If the appellant perfects an appeal by timely submitting a substantive appeal (VA Form 9), the matter should be returned to the Board for further appellate review.

3.Thereafter, the case should be returned to the Board for appellate review of all issues which have been perfected on appeal to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs