Citation Nr: 1456928 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 12-21 092 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to an effective date prior to January 21, 2010, for the grant of entitlement to service connection for posttraumatic stress disorder (PTSD).

2. Entitlement to an initial evaluation in excess of 10 percent for PTSD.
 
3. Entitlement to an evaluation in excess of 30 percent for carpal tunnel syndrome of the left upper extremity.

4. Entitlement to an evaluation in excess of 20 percent for carpal tunnel syndrome of the right upper extremity.

5. Entitlement to an effective date prior to July 6, 2012, for the award of entitlement to special monthly compensation (SMC) based on the loss of use of a creative organ. 

6. Whether there was clear and unmistakable error in a March 3, 2010, rating decision that granted entitlement to service connection for erectile dysfunction with a non-compensable evaluation. 
7. Entitlement to a total disability evaluation based upon individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: John S. Berry, Attorney at Law


ATTORNEY FOR THE BOARD

Joseph R. Keselyak, Counsel


INTRODUCTION

The Veteran served on active duty from November 1969 to October 1971.

This matter comes to the Board of Veterans' Appeals (Board) from May 2012, June 2012, December 2012 and April 2013 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska. In a May 2010 rating decision, the RO denied the claim for service connection of PTSD; however, the May 2012 rating decision effectuated a grant and the Veteran perfected an appeal with respect thereto.

In January 2013, the Veteran's attorney moved to revise a March 2010 rating decision of the RO, which granted entitlement to service connection for erectile dysfunction, albeit with a non-compensable evaluation, on the basis of CUE. The March 2010 rating decision does not show that SMC was likewise awarded for loss of use of a creative organ. In April 2013, the RO considered the motion, and found no CUE in the March 2010 rating decision. The Veteran's attorney filed a timely Notice of Disagreement (NOD). He rightly points out that no Statement of the Case (SOC) has been issued on the matter. The issue is thus listed on the cover page and remanded herein below. See Manlicon v. West, 12 Vet. App. 238 (1999); see also Godfrey v. Brown, 7 Vet. App. 398, 408-410 (1995).

A review of the record reveals evidence of unemployability and interference with employment, including as due to the service connected disabilities on appeal. A claim for TDIU is considered part and parcel of an increased rating claim, when such a claim is raised by the record. See Rice v. Shinseki, App. 447 (2009). The record raises a question of whether the Veteran is unemployable due to service-connected disability, and as such, TDIU is properly before the Board.

The issues of entitlement to an effective date prior to July 6, 2012, for the award of entitlement to SMC based on the loss of use of a creative organ, whether there was CUE in a March 3, 2010, rating decision that granted entitlement to service connection for erectile dysfunction with a non-compensable evaluation, and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's claim of service connection for PTSD was denied in a July 2002 rating decision that he did not appeal, and no service records were associated thereafter.

2. The Veteran's application to reopen the previously denied claim for service connection of PTSD was received by VA on January 21, 2010.

3. Throughout the applicable period, the Veteran's PTSD has manifested by symptoms including infrequent intrusive thoughts, occasional flashbacks, moderate avoidance of people and places, moderate estrangement and affective restriction, exaggerated startle, hypervigilance, irritability/outbursts of anger and difficulty with concentration; it has caused him only nominal social and occupational impairment.

4. Throughout the applicable period, the Veteran's CTS of the left upper extremity has not manifested by severe incomplete or complete paralysis, but rather moderate pain and numbness with decreased manual dexterity, with no limitation of motion or atrophy. 

5. Throughout the applicable period, the Veteran's CTS of the right upper extremity has not manifested by severe incomplete or complete paralysis, but rather moderate pain and numbness with decreased manual dexterity, with no limitation of motion or atrophy. 


CONCLUSIONS OF LAW

1. The RO's July 2002 rating decision denying the Veteran's claim for service connection of PTSD is final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. § 20.1103 (2013).

2. The requirements for an effective date prior to January 21, 2010, for the grant of service connection for PTSD have not been met. 38 U.S.C.A. §§ 5103, 5103A, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.1, 3.102, 3.155, 3.156, 3.159, 3.400 (2013).

3. The criteria for the assignment of an initial disability rating in excess of 10 percent for service-connected PTSD have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.321(b), 38 C.F.R. § 4.130, Diagnostic Code 9411 (2013).

4. The criteria for disability rating in excess of 30 percent for carpal tunnel syndrome of left upper extremity have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321(b), 38 C.F.R. § 4.124a, Diagnostic Code 8515 (2013).

5. The criteria for disability rating in excess of 20 percent for carpal tunnel syndrome of the right upper extremity have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321(b), 38 C.F.R. § 4.124a, Diagnostic Code 8515 (2013).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Notice and Assistance

Upon receipt of a complete or substantially complete application for benefits and prior to an initial unfavorable decision on a claim by an agency of original jurisdiction, VA is required to notify the appellant of the information and evidence not of record that is necessary to substantiate the claim. In the notice, VA will inform the claimant which information and evidence, if any, that the claimant is to provide to VA and which information and evidence, if any, that VA will attempt to obtain on behalf of the claimant. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159 (2013); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). Notice should also address the rating criteria and effective date provisions that are pertinent to the appellant's claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The RO provided the appellant pre-adjudication notice by letters dated in February and March 2010, and March 2012 for all claims decided herein. 

With specific respect to the initial PTSD evaluation and assigned effective date, in a case such as this, where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service connection claim has been more than substantiated, it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Id.; Dunlap v. Nicholson, 21 Vet. App. 112 (2007). The appellant bears the burden of demonstrating any prejudice from defective notice with respect to the downstream elements. Goodwin v. Peake, 22 Vet. App. 128 (2008). The Veteran has not alleged any prejudice; thus, that burden has not been met in this case.

VA has obtained the Veteran's service treatment and personnel records, relevant VA records, assisted the Veteran in obtaining evidence, afforded the Veteran physical examinations, and obtained medical opinions as to the severity of his service-connected disabilities. 
In a March 2014 communication, the Veteran's attorney alludes to possible outstanding relevant VA records. However, he also states that it "would seem" that the Veteran receives regular VA treatment and that he "cannot explain" why the file does not contain any records. The Board recognizes that VA is under a duty to obtain any such outstanding records. See Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992). However, the "duty to assist is not always a one-way street." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). In this case, Attorney Berry identifies no treatment, treatment dates or VA facility related to treatment for the disabilities on appeal. Rather, he merely suggests that there may be some outstanding VA records, but cannot identify whether they even exist. As the duty-to-assist is not a one-way street, and the Veteran has not identified actual outstanding records, the Board finds it unnecessary to go on a fishing expedition to obtain any possibly outstanding VA records. 

All known and available records relevant to the issues on appeal have been obtained and associated with the Veteran's claims file. 

The United States Court of Appeals for Veterans Claims (hereinafter "the Court") has held that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examinations obtained in this case are adequate. They are predicated on a substantial review of the record and medical findings and consider the Veteran's complaints, symptoms and history. As the reports ultimately provide sufficient information such that the Board can render an informed determination, they are adequate. Accordingly, VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issues addressed in this decision has been met. 38 C.F.R. § 3.159(c)(4).

VA has substantially complied with the notice and assistance requirements and the Veteran is not prejudiced by a decision on the claim at this time.

Earlier Effective Date, Grant of Service Connection for PTSD

The Veteran filed a claim for service connection of "nerves" in October 1972. In a November 1972 rating decision, the RO denied the claim on the grounds that the Veteran did not report for a VA examination. He did not appeal that decision, and did not file another claim for service connection of PTSD until July 2001.

In the July 2001 claim, the Veteran related a history of various stressors and requested service connection. The AOJ denied the claim in a July 2002 rating decision, on the grounds that there was no medical evidence showing PTSD or the occurrence of a stressful experience sufficient to grant the claim. At the time of this rating decision, the Veteran's service and personnel records had been associated with the claims file, and were considered by the AOJ in its adjudication. The Veteran did not appeal the determination. 

On January 21, 2010, the Lincoln RO received the Veteran's claim for "PTSD," inter alia. The RO denied the claim in a May 2010 rating decision, confirming and continuing the previous denial, yet reopening the claim. The Veteran filed a NOD to that determination, and the RO ultimately granted the claim in the aforementioned May 2012 rating decision, and assigned the Veteran's PTSD a 10 percent disability evaluation effective January 21, 2010. The Veteran appealed that determination, and the matter is now before the Board. 

The assignment of effective dates of awards is generally governed by 38 U.S.C.A. § 5110 and 38 C.F.R. § 3.400. Unless specifically provided otherwise, the effective date of an award based on an original claim for service connection "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C.A. § 5110(a).

Any award based on a subsequently filed application for benefits can be made effective no earlier than the date of the new application. See 38 C.F.R. § 3.400(q), (r). Specifically, the effective date of an award of disability compensation based upon the submission of new and material evidence, other than service department records received after final disallowance, will be the date of receipt of the new claim or the date that entitlement arose, whichever is later. 38 C.F.R. § 3.400(q)(1)(ii) (emphasis added).

A specific claim in the form prescribed by the Secretary of VA must be filed in order for benefits to be paid to any individual under the laws administered by the VA. 38 U.S.C.A. § 5101(a). A "claim" is defined broadly to include a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p); Brannon v. West, 12 Vet. App. 32, 34-5 (1998); Servello v. Derwinski, 3 Vet. App. 196, 199 (1992).

Any communication indicating an intent to apply for a benefit under the laws administered by the VA may be considered an informal claim provided it identifies, but not necessarily with specificity, the benefit sought. See 38 C.F.R. § 3.155(a). To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129, 134 (1992).

Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year from the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim. An application is defined as a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p); see also Rodriguez v. West, 189 F.3d. 1351 (Fed. Cir. 1999), (an expressed intent to claim benefits must be in writing in order to constitute an informal claim; an oral inquiry does not suffice).

VA medical records cannot be accepted as informal claims for disabilities where service connection has not been established. The mere presence of medical evidence does not establish intent on the part of the veteran to seek service connection for a condition. See Brannon v. West, 12 Vet. App. 32, 35 (1998); Lalonde v. West, 12 Vet. App. 377, 382 (1999) (where appellant had not been granted service connection, mere receipt of medical records could not be construed as informal claim). Merely seeking treatment does not establish a claim, to include an informal claim, for service connection.

Further, the mere presence of a disability does not establish an intent on the part of the Veteran to seek service connection for that condition. See KL v. Brown, 5 Vet. App. 205, 208 (1993); Crawford v. Brown, 5 Vet. App. 33, 35 (1995).

In claims for VA benefits, VA shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Between the prior final denial dated in July 2002 and the January 21, 2010, communication received by the AOJ, there appears no evidence of any intent to file a claim for benefits. There are no communications from the Veteran or his attorney dated in this period. VA records do not exist prior to January 21, 2010, reflecting PTSD. See February 12, 2010, VA Nursing Intake record. No service records were associated with the claims file following the July 2002 denial, and all service records were of record at that time of the prior denial. 

In this case, the evidence shows that the Veteran's request to reopen his claim of service connection for PTSD was received at the RO on January 21, 2010. Because the July 2002 denial became final and his claim of entitlement to service connection for PTSD was only reopened pursuant to the claim received by VA in the aforementioned January 21, 2010, communication, this is the earliest effective date that can possibly be assigned. 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400 (2013). 

No service records were associated after the July 2002 rating decision such that an earlier effective date for the grant of PTSD could be awarded. The claim was reopened and granted in light of new medical evidence relating to the Veteran's disability and the circumstances of his service. See March 2011 VA PTSD examination report. Accordingly, there is no legal basis for an effective date earlier than January 21, 2010, for the award of service connection for PTSD, and the claim must be denied.

Although the Board understands the Veteran's argument that he initially claimed service connection in 1972 and July 2001 for the same condition that was ultimately granted in May 2012 effective January 21, 2010, it must apply the law as it currently stands, which does not allow for an earlier effective date under such circumstances. Because the claim was denied and not appealed in July 2002, the effective date cannot reach back prior to the currently assigned effective date. Rather, it can only be established as of the date of the claim to reopen. 

Initial PTSD Evaluation

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2013). Separate rating codes identify the various disabilities. 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability is resolved in favor of the veteran. 38 C.F.R. § 4.3.

The VA schedule of ratings will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). 38 C.F.R. § 3.321(b)(1) provides that, in exceptional circumstances, where the schedular evaluations are found to be inadequate, the veteran may be awarded a rating higher than that encompassed by the schedular criteria. According to the regulation, an extraschedular disability rating is warranted upon a finding that "the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards." Id.

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. See 38 C.F.R. §§ 4.1, 4.2, 4.41 (2013). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. See 38 C.F.R. § 4.2 (2013); Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In addition, an appeal from the initial assignment of a disability rating requires consideration of the entire time period involved, and contemplates "staged ratings" where warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). 

When evaluating a mental disorder, VA shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. VA shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner's assessment of the level of disability at the moment of examination. 38 C.F.R. § 4.126(a).

A 10 percent rating is assigned when a veteran's psychiatric disability causes occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or when symptoms are controlled by continuous medication. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 30 percent rating is assigned when a veteran's psychiatric disability causes occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is assigned when a veteran's psychiatric disability causes occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-term and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is assigned when a veteran's psychiatric disability causes occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or an inability to establish and maintain effective relationships. Id.

A 100 percent rating is assigned when a veteran's psychiatric disability causes total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; danger of hurting self or others; intermittent inability to perform activities of living (including maintenance of minimal hygiene); disorientation to time or place; or, memory loss for names of close relatives, occupation, or own name. Id.

When determining the appropriate disability evaluation to assign, the Board's primary consideration is the Veteran's symptoms, but it must also make findings as to how those symptoms impact the Veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term "such as" in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442. Nevertheless, as all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the Veteran's impairment must be "due to" those symptoms, a veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118. Additionally, a Global Assessment of Functioning (GAF) score is often used by treating examiners to reflect the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See Richard v. Brown, 9 Vet. App. 266 (1996). A GAF score is highly probative as it relates directly to the Veteran's level of impairment of social and industrial adaptability, as contemplated by the rating criteria for mental disorders. See Massey v. Brown, 7 Vet. App. 204, 207 (1994).

GAF scores from 71 through 80 is indicative that, if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more that slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in school work). Scores ranging from 61 through 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. Scores ranging from 51 through 60 reflect moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Scores ranging from 41 through 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A GAF score of from 31 through 40 contemplates some impairment in reality testing or communication (e.g., speech at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995).

The Veteran filed his claim for service connection of PTSD in January 2010. VA records dated February 12, 2010, document a positive PTSD screen at that time. PTSD had not yet been diagnosed and this was the Veteran's first presentation to VA for treatment. The Veteran expressed that he believed he had PTSD from his Vietnam service. 

In March 2011, the Veteran was afforded a VA examination for PTSD. The report documents that the Veteran had not been assessed with or treated for a psychiatric disorder prior to the examination. At the time of the examination, history reflects that the Veteran had been married 3 times, but was not then married. He was living with his girlfriend, although there was some apparent difficulty in that relationship, as she had threatened to leave him from time to time. The Veteran related that he had no social life, and tended to keep to himself. He had little contact with his children, and said that he did not have a close family. In terms of recreation, the Veteran enjoyed working on old cars. He reported some difficulty in concentrating on tasks, noting that he would often stop one task, start another, and then come back to the original task days later. He had no history of suicide attempts or violence/assaultiveness, or any issues with alcohol or drugs. 

Mental status examination showed that the Veteran was clean and casually dressed. Psychomotor activity was unremarkable, as was speech. He was cooperative, friendly and attentive. His affect was restricted and he had an anxious mood. Attention was intact. Thought process was unremarkable, as was thought content. He had no delusions. He understood the outcome of behavior and had average intelligence. He had insight to his problems. He denied sleep impairment and hallucinations. He had no inappropriate behavior and could interpret proverbs appropriately. There were no homicidal or suicidal thoughts. Impulse control was good. He was able to maintain minimum daily hygiene and there were no problems with the activities of daily living. 

In terms of PTSD symptoms, the examiner outlined several. The Veteran had nightmares, about 2 to 3 times per week, but apparently went 5 to 6 months without having recurrence. He reported infrequent intrusive thoughts, images, and/or memories of trauma. He had occasional flashbacks. He made moderate efforts to avoid places, situations or people. He had moderate estrangement and affective restriction. There was episodic sleep difficulty when the Veteran had nightmares. He had an exaggerated startle reaction, was hypervigilant, irritable/had outbursts of anger and reported difficulty with concentration. The Veteran's PTSD symptoms had not remitted. Clinician Administered PTSD Scale (PTSD) resulted in characterization of the symptoms as mild/moderate. PTSD with a GAF of 62 was assessed. 

In terms of employment, notwithstanding the TDIU claim remanded herein, it is noted that the Veteran had worked as a heavy equipment operator, a foreman and a truck driver during his career, and retired due to age or duration. The examiner specifically acknowledged symptoms of PTSD that were transient or mild, and particularly with resultant decreased work efficiency and ability to perform occupational tasks during periods of significant stress. 

In order to attain a rating of 30 percent for service-connected PTSD, the evidence must show occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and conversation normal) due to PTSD symptomatology such as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment and mild memory loss. 38 C.F.R. § 4.130, Diagnostic Code 9411. The evidence of record indicates that the Veteran has some social impairment and tends to isolate. However, at the time of VA examination in March 2011 he had a live-in girlfriend, and contact with his children, albeit limited. With respect to occupational history and impairment, although the evidence indicates some interpersonal difficulties and anger, the evidence shows that the Veteran retired after at least 20 years of steady employment was promoted during the course of his career. Notwithstanding the Veteran's employment history, VA examination in March 2011 particularly noted decreased work efficiency and ability to perform occupational tasks during periods of significant stress, the exact level of impairment contemplated by the rating criteria providing for the currently assigned baseline 10 percent evaluation. 38 C.F.R. § 4.130, Diagnostic Code 9411. The level of occupational impairment is a finding of fact. Vazquez-Claudio, 713 F.3d at 118. Bastien v. Shinseki, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact finder."). In terms of outright symptoms, the Veteran's PTSD has manifested by symptoms including infrequent intrusive thoughts, occasional flashbacks, moderate avoidance of people and places, moderate estrangement, moderate affective restriction, exaggerated startle, hypervigilance, irritability/outbursts of anger and difficulty with concentration. Although anxious mood was noted on examination, there was no indication of suspiciousness, panic attacks, or chronic sleep impairment. There was no memory impairment, although the Veteran reported concentration problems. These symptoms do not approximate those contemplated by the rating criteria providing for a higher evaluation. Mauerhan, supra. Thus, with consideration of the Veteran's PTSD symptomatology and its occupational and social effects, the Board does not conclude that an initial 30 percent evaluation is warranted. Gilbert, supra. 

Similarly, the evidence does not support evaluations of 50, 70 or 100 percent. Indeed, there is no evidence of speech or thought disorders, panic attacks, impaired judgment, impaired impulse control, spatial disorientation, suicidal or homicidal ideation, or neglect of personal appearance or inability to perform activities of daily living. There is also no evidence of delusions. Nor are there other symptoms on par with the level of severity contemplated by these symptoms. The record rather indicates anxiety and restricted affect, as well as the level social and occupational impairment described above. The manifestations do not approximate the criteria contemplated by example in the diagnostic criteria See Mauerhan v. Principi, supra. As such, the Veteran's overall disability picture is found to most nearly approximate the 10 percent evaluation assigned throughout the rating period on appeal.

The Board has also considered the Global Assessment of Functioning (GAF) score of record. GAF scores are a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Carpenter, 8 Vet. App., 242. The Veteran has been assigned a GAF score of 62, indicating mild symptoms, and the Board finds this to be consistent with the above-outlined PTSD symptoms warranting a 10 percent evaluation as outlined above. Thus, a rating in excess of 10 percent is not proper and the claim must be denied. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


Disability Evaluations of Bilateral CTS

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2013). Separate rating codes identify the various disabilities. 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability is resolved in favor of the veteran. 38 C.F.R. § 4.3.

The evaluation of the same disability under various diagnoses is to be avoided. Disability from injuries to the muscles, nerves, and joints of an extremity may overlap to a great extent, so that special rules are included in the appropriate bodily system for their evaluation. Both the use of manifestations not resulting from service-connected disease or injury in establishing the service-connected evaluation, and the evaluation of the same manifestation under different diagnoses are to be avoided. 38 C.F.R. § 4.14. Notwithstanding the above, VA is required to provide separate evaluations for separate manifestations of the same disability which are not duplicative or overlapping. See Esteban v. Brown, 6 Vet. App. 259, 261 (1994).

The VA schedule of ratings will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). 38 C.F.R. § 3.321(b)(1) provides that, in exceptional circumstances, where the schedular evaluations are found to be inadequate, the veteran may be awarded a rating higher than that encompassed by the schedular criteria. According to the regulation, an extraschedular disability rating is warranted upon a finding that "the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards." Id.

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. See 38 C.F.R. §§ 4.1, 4.2, 4.41 (2013). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. See 38 C.F.R. § 4.2 (2013); Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, "staged ratings" are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The RO has increased the disability evaluation of the Veteran's carpal tunnel syndrome (CTS) of the right upper extremity to 20 percent disabling, and CTS of the left upper extremity to 30 percent disabling under Diagnostic Code 8515, pertaining to incomplete paralysis of the median nerve, effective the date of his claim, February 24, 2012. The Veteran is left-hand dominant and the difference in rating reflects this.

Diagnostic Code 8515 provides ratings for paralysis of the median nerve. Diagnostic Code 8515 provides that mild incomplete paralysis is rated 10 percent disabling on the major side and 10 percent on the minor side; moderate incomplete paralysis is rated 30 percent disabling on the major side and 20 percent on the minor side; and severe incomplete paralysis is rated 50 percent disabling on the major side and 40 percent on the minor side. Complete paralysis of the median nerve, with the hand inclined to the ulnar side, the index and middle fingers more extended than normally, considerable atrophy of the muscles of the thenar eminence, the thumb in the plane of the hand (ape hand); pronation incomplete and defective, absence of flexion of index finger and feeble flexion of middle finger, cannot make a fist, index and middle fingers remain extended; cannot flex distal phalanx of thumb, defective opposition and abduction of the thumb at right angles to palm; flexion of wrist weakened; pain with trophic disturbances, is rated 70 percent disabling on the major side and 60 percent on the minor side. 38 C.F.R. § 4.124a. The term "incomplete paralysis" indicates a degree of lost or impaired function that is substantially less than that which is described in the criteria for an evaluation for complete paralysis of this nerve, whether the less than total paralysis is due to the varied level of the nerve lesion or to partial nerve regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a. 

Notably of record, is a report of VA examination dated in February 2010, albeit related to evaluation of diabetes. The report contains an EMG consult note, which documents an impression of moderate bilateral CTS, right worse than the left. The Veteran filed his claim for increase in February 2012.

In May 2012, the Veteran was afforded a VA examination to address the severity of his CTS of the upper extremities. At the examination, the Veteran reported constant numbness in his hands and intermittent pain. He mainly complained of waking from sleep with hand pain. He related relief with shaking the hands. He did not use any medications. He was left-hand dominant. Moderate intermittent pain, and moderate numbness were noted on examination. Muscle strength was normal in all planes. There was no muscle atrophy. Deep tendon reflexes were normal. Sensory examination was normal. Trophic changes were checked on the Disability Benefits Questionnaire (DBQ), but not explained. 

Special tests were performed on the median nerve. Phalen's sign was positive on the left and right, although Tinel's was negative. The median nerve exhibited moderate, incomplete paralysis on both the right and left. The examiner remarked that amputation would not serve as well as a prosthesis. There were no surgical scars or other pertinent physical findings, complications, conditions, signs or symptoms. 

In terms of functional impact, the Veteran related that it did affect his ability to work, although he was retired. He related difficulty turning papers in a magazine, and being unable to work on old cars due to tingling and loss of grip. He related having to concentrate when picking up a cup of coffee. He described having little feeling in his hands, an difficulty holding a piece of paper. He reported difficulty with taking a cap off of a water bottle. He did not wear a brace. 

Flare-ups were reported, albeit as variable. There was no limitation of motion or evidence of painful motion for any of the fingers or thumbs. In terms of functional loss, the examiner described inability to handle small items due to diminished sensation. There was no tenderness to pain or palpation. Hand grip was normal. There was no ankylosis. 

The RO sought an addendum to the May 2012 opinion to the extent it indicated trophic changes. The examiner rendered an addendum in June 2012, correcting the opinion to show that there were no trophic changes. 

In order to establish higher evaluations for either upper extremity, the evidence must approximately show severe incomplete paralysis of the median nerve, or complete paralysis thereof. Certainly, the Veteran's CTS has not manifested by complete paralysis in either upper extremity. EMG testing in February 2010 showed moderate bilateral CTS, right worse than the left. VA examination in May 2012 showed no limitation of motion and normal muscle strength, albeit with some decreased grip, and no atrophy. Examination showed moderate pain and numbness, with decreased ability to handle items. The examiner characterized the CTS in each extremity as moderately incompletely paralyzing. Under these circumstances, and without evidence of further impairment, e.g. muscle atrophy or impairment, the Board does not find that the evidence approximates a finding of severe incomplete or complete paralysis of the median nerve in either upper extremity. Thus, the claims must be denied. 38 C.F.R. § 4.124a, Diagnostic Code 8515. 

Extraschedular Consideration, PTSD and Bilateral CTS

The remaining question is whether an extraschedular evaluation is warranted. Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected sinusitis is inadequate. A comparison between the level of severity and symptomatology of the Veteran's conditions with the established criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. Regarding CTS, the criteria provide exact standards for evaluating the median nerve (involved here) based upon the extent of incomplete paralysis, as well as complete paralysis. Regarding PTSD, the Veteran's disability is manifested by signs and symptoms such as infrequent intrusive thoughts, occasional flashbacks, moderate avoidance of people and places, moderate estrangement and affective restriction, exaggerated startle, hypervigilance, irritability/outbursts of anger and difficulty with concentration. The diagnostic code in the rating schedule for mental disorders provides disability ratings for the Veteran's exact symptoms. The Board, therefore, has determined that referral of this case for extraschedular consideration pursuant to 38 C.F.R. 3.321(b)(1) is not warranted.

Finally, the Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional symptoms that have not been attributed to a specific service-connected disorder, and all symptoms have been attributed to specific disabilities. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.


ORDER

Entitlement to an effective date prior to January 21, 2010, for the grant of entitlement to service connection for PTSD is denied.

Entitlement to an initial evaluation in excess of 10 percent for PTSD is denied.

Entitlement to an evaluation in excess of 30 percent for carpal tunnel syndrome of the left upper extremity is denied.

Entitlement to an evaluation in excess of 20 percent for carpal tunnel syndrome of the right upper extremity is denied.


REMAND

As noted herein above, the Board is remanding the matter of whether there is CUE in a March 3, 2010, rating decision that granted entitlement to service connection for erectile dysfunction with a non-compensable evaluation for issuance of a SOC. Manilcon, supra. As the Veteran's disagreement with the effective date assigned may be affected by the CUE matter remanded herein below, the Board finds that these matters are inextricably intertwined. Accordingly, the claim for an earlier effective date for the award of SMC must be deferred pending adjudication of the Veteran's CUE claim. Harris v. Derwinski, 1 Vet. App. 180 (1991).

Also, as noted above, the Court held that a TDIU claim cannot be considered separate and apart from an increased rating claim. Rice v. Shinseki, 22 Vet. App. 447 (2009). Instead, the Court held that a TDIU claim is an attempt to obtain an appropriate rating for a service-connected disability. The Court in Rice also found that, when entitlement to a TDIU is raised during the adjudicatory process of the underlying disability, it is part of the claim for benefits for the underlying disability. There is evidence of record indicating that the Veteran has alleged unemployability as a result of his service-connected disabilities. See VA examination reports. Therefore, the Board finds that a TDIU claim has been raised in this case. As such, proper notice and development must now be undertaken.

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with appropriate notice of VA's duties to notify and to assist. Particularly, the Veteran should be properly notified of how to substantiate a claim for entitlement to TDIU. Additionally provide him with VA Form 21-8940 in connection with the implicit claim for entitlement to TDIU, and request that he supply the requisite information. 

2. Issue to the Veteran and his representative a SOC addressing whether there was clear and unmistakable error in a March 3, 2010, rating decision that granted entitlement to service connection for erectile dysfunction with a non-compensable evaluation. Along with the SOC, furnish to the Veteran a VA Form 9 (Appeal to Board of Veterans' Appeals), and afford him the applicable time period for perfecting an appeal as to this issue.

The Veteran is hereby reminded that appellate consideration of the matters identified above (whether there was clear and unmistakable error in a March 3, 2010, rating decision that granted entitlement to service connection for erectile dysfunction with a non-compensable evaluation) may be obtained only if a timely appeal is perfected.

3. After completion of paragraph 1, adjudicate the Veteran's claim of entitlement to a TDIU, in light of all pertinent evidence and legal authority. If any benefit sought on appeal remains denied, furnish to the Veteran an appropriate SSOC that includes clear reasons and bases for all determinations, and afford him the appropriate time period for response before the claims file is returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
BETHANY L. BUCK
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs