﻿Citation Nr: AXXXXXXXX
Decision Date: 08/22/19 Archive Date: 08/22/19

DOCKET NO. 190401-8135
DATE: August 22, 2019

REMANDED

Entitlement to service connection for a right knee disorder is remanded.

Entitlement to service connection for a right hip disorder is remanded.

Entitlement to service connection for a right ankle disorder is remanded.

Entitlement to service connection for a left hip disorder is remanded.

Entitlement to service connection for a left knee disorder is remanded.

Entitlement to service connection for a left ankle disorder is remanded.

ORDER

Readjudication of the claim of entitlement to service connection for sleep apnea is granted.

Readjudication of the claim of entitlement to service connection for a right knee disorder is granted.

Readjudication of the claim of entitlement to service connection for a right hip disorder is granted. 

Readjudication of the claim of entitlement to service connection for an acquired mental disorder is granted. 

Service connection for sleep apnea is denied.

Service connection for an acquired mental disorder is denied. 

For the period on appeal from October 31, 2016, entitlement to a disability rating of 30 percent, but not higher, for the service-connected headaches is granted. 

Entitlement to an effective date earlier than October 31, 2016, for the grant of service connection for headaches is denied.

FINDINGS OF FACT

1. New evidence that is relevant to the issue of entitlement to service connection for sleep apnea has been received since the September 2016 final denial of the claim.

2. New evidence that is relevant to the issue of entitlement to service connection for a right knee disorder has been received since the April 2017 final denial of the claim.

3. New evidence that is relevant to the issue of entitlement to service connection for a right hip disorder has been received since the April 2017 final denial of the claim. 

4. New evidence that is relevant to the issue of entitlement to service connection for an acquired mental disorder has been received since the September 2016 final denial of the claim. 

5. Sleep apnea is not related to service. 

6. An acquired mental disorder is not related to service. 

7. For the period on appeal from October 31, 2016, the service-connected headaches have been manifested by characteristic prostrating attacks occurring on an average once a month over last several months. 

8. The earliest date of a pending claim of entitlement to service connection for headaches is October 31, 2016.

CONCLUSIONS OF LAW

1. The criteria for readjudication of the claim of entitlement to service connection for sleep apnea have been met. 38 U.S.C. §§ 5103, 5103A, 5107, 5108 (West 2014); 38 C.F.R. §§ 3.102, 3.156(d), 3.159 (2018).

2. The criteria for readjudication of the claim of entitlement to service connection for a right knee disorder have been met. 38 U.S.C. §§ 5103, 5103A, 5107, 5108 (West 2014); 38 C.F.R. §§ 3.102, 3.156(d), 3.159 (2018).

3. The criteria for readjudication of the claim of entitlement to service connection for a right hip disorder have been met. 38 U.S.C. §§ 5103, 5103A, 5107, 5108 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 (2018).

4. The criteria for readjudication of the claim of entitlement to service connection for an acquired mental disorder have been met. 38 U.S.C. §§ 5103, 5103A, 5107, 5108 (West 2014); 38 C.F.R. §§ 3.102, 3.156(d) (2018).

5. The criteria for entitlement to service connection for sleep apnea have not been met. 38 U.S.C. §§ 1110, 1131, 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2018).

6. The criteria for entitlement to service connection for an acquired mental disorder have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 (2018).

7. For the period on appeal from October 31, 2016, the criteria for a disability rating of 30 percent for the service-connected headaches have been met; the criteria for a rating higher than 30 percent have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.124a, Diagnostic Code 8100 (2018).

8. The criteria for entitlement to an effective date earlier than October 31, 2016, for the grant of service connection for headaches have not been met. 38 U.S.C. §§ 5101, 5103, 5103A, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.102, 3.151, 3.400 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The appellant is a veteran (the Veteran) who had qualifying (honorable) active duty service from August 1989 to April 1996, and who had non-qualifying service from March 1997 to December 2002

The Board notes that the rating decisions on appeal were issued in July 2018 and March 2019. The Veteran had previously initiated an appeal of rating decisions dated in September 2016 and April 2017. However, in April 2018, the Veteran elected to withdraw those appeals in favor of the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran selected the Higher-Level Review lane when she opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the July 2018 and March 2019 AMA rating decisions considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed these rating decisions to the Board and requested additional evidence submission.

In the May 2019 Notice of Disagreement, the Veteran listed issues of entitlement to service connection for ptosis and “Character of service.” These are matters which were not adjudicated in the July 2018 and March 2019 AMA rating decisions. Accordingly, the Board does not have jurisdiction to address these matters. 

The Board has considered whether the rating issue on appeal encompasses a claim of entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU) in accordance with Rice v. Shinseki, 22 Vet. App. 447 (2009). However, the evidence establishes that the Veteran has retained employment with VA throughout the period on appeal. In Faust v. West, 13 Vet. App. 342 (2000), the United States Court of Appeals for Veterans’ Claims (Veterans Court) held that where the claimant was actually employed at a substantially gainful occupation, such employment constituted, as a matter of law, “actual employability” for the purposes of 38 C.F.R. § 3.343(c)(1). Accordingly, the Board finds that a claim for TDIU is not reasonably raised by the record.

The Veteran’s attorney has argued that prior RO decisions which denied service connection for headaches were based on clear and unmistakable error (CUE) (Record 04/01/2019). However, the basis for this claim is the failure to apply 38 C.F.R. § 3.309(a), a provision which does not apply to headaches. To the extent the RO did not acknowledge the 1998 diagnosis of migraines, this amounts to a mere disagreement with how the evidence was weighed. This on its face is not CUE. See Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993), aff’d on reconsideration, 6 Vet. App. 162, 163 (1994). Moreover, the claim was raised after the RO’s adjudications in July 2018 and March 2019. The United States Court of Appeals for Veterans’ Claims (Veterans Court) has held that, when a new theory of CUE is presented first to the Board, such matter is not “subject to decision by the Secretary,” and the Board would lack appellate jurisdiction over the newly raised theory of CUE. See Godfrey v. Brown, 7 Vet. App. 398, 410 (1995). Accordingly, the allegations of CUE in prior RO decisions will not be addressed in this decision. The Veteran is advised to raise such a claim with the RO on the appropriate form. 

Please note this appeal has been advanced on the Board’s docket pursuant to 38 C.F.R. § 20.900(c) (2018). 38 U.S.C. § 7107(a)(2) (West 2014).

Service connection—Law and Regulations

VA law provides that, for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, or other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation, except if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs. 38 U.S.C. §§ 1110, 1131 (West 2014). 

Entitlement to service connection on a direct basis requires (1) evidence of current nonservice-connected disability; (2) evidence of in-service incurrence or aggravation of disease or injury; and (3) evidence of a nexus between the in-service disease or injury and the current nonservice-connected disability. 38 C.F.R. § 3.303(a); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection on a secondary basis requires (1) evidence of a current nonservice-connected disability; (2) evidence of a service-connected disability; and (3) evidence establishing that the service-connected disability caused or aggravated the current nonservice-connected disability. 38 C.F.R. § 3.310(a),(b); Wallin v. West, 11 Vet. App. 509, 512 (1998). 

For specific enumerated diseases designated as “chronic” there is a presumption that such chronic disease was incurred in or aggravated by service even though there is no evidence of such chronic disease during the period of service. In order for the presumption to attach, the disease must have become manifest to a degree of 10 percent or more within one year of separation from active duty. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). 

Presumptive service connection for chronic diseases may alternatively be established by way of continuity of symptomatology under 38 C.F.R. § 3.303(b). However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic in 38 C.F.R. § 3.309(a) Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

After the evidence has been assembled, it is the Board's responsibility to evaluate the entire record. 38 U.S.C. § 7104(a) (West 2014). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2018). A VA claimant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for sleep apnea.

Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for a right knee disorder.

Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for a right hip disorder.

Whether new and relevant evidence has been received to readjudicate the claim of entitlement to service connection for an acquired mental disorder. 

In a September 2016 rating decision, VA denied service connection for sleep apnea and an acquired psychiatric disorder. In an April 2017 rating decision, VA denied service connection for a right knee disorder and a right hip disorder. In the July 2018 and March 2019 ratings on appeal, the RO found that new and relevant evidence had been received and all four claims were readjudicated. This is a favorable finding which the Board will not reverse. Accordingly, readjudication of the claims is warranted. 

Entitlement to service connection for sleep apnea.

Service treatment records from the Veteran’s qualifying period of service reveal no complaints, treatments, or diagnoses pertinent to sleep apnea. The Veteran was separated from active duty on April 20, 1996. Her subsequent service is not qualifying for VA benefits. 

A report of medical examination performed in March 1997 reveals normal findings for the mouth and throat (Record 05/15/2003 at 9). The Veteran denied any history of, or current, shortness of breath (Record 05/15/2003 at 13). 

At separation from the Veteran’s second period of service in 2002, the Veteran reported trouble at night due to breathing and sinus (snoring) (Record 05/15/2003 at 3). 

A May 2004 VA General Medical Examination reveals normal examination of the throat (Record 05/21/2004). 

July 14, 2006, Clinical Note reveals that a sleep apnea episode was witnessed by her mom (Record 07/14/2016 at 684). 

An August 2016 Sleep Apnea Examination reveals a diagnosis of severe obstructive sleep apnea with diagnosis in July 2003 (Record 08/12/2016). The Veteran reported that, during service, she was told by sleep mates that she snored. 

The Veteran submitted a statement dated October 2016 from an acquaintance who knew here in the service. The statement attests to the Veteran appearing fatigued from 1990 to 1992 and witnessing loud snoring from 2000 to 2002 (Record 10/27/2016). Another individual attested to witnessing loud snoring, but did not specify the dates (Record 10/27/2016). Another individual attested to the difficult hours worked by food service personnel and to witnessing the Veteran snoring while on her breaks (Record 10/27/2016). 

An August 2018 VA Sleep Apnea Examination reveals a diagnosis of sleep apnea (Record 08/20/2018). The examiner opined that sleep apnea is not as likely as not related to service (Record 08/20/2018). A January 2019 addendum opinion acknowledges the lay evidence of witnessed snoring, and that snoring was noted on the service separation examination in 2002. The examiner noted that this was during her dishonorable period of service and should not be considered in forming an opinion (Record 01/28/2019). 

A January 2019 VA Sleep Apnea Examination reveals the opinion that it is less than likely that current sleep apnea began during service. The rationale was that weight gain is the major risk factor for sleep apnea and the Veteran’s weight gain happened post service. Her initial enlistment weight was 121 pounds. On March 6, 1997, she weighed 169 pounds. On August 7, 2006, she weighed 192 pounds (Record 01/28/2019). 

A private opinion dated in March 2019 finds that sleep apnea is related to service. The rationale was that was that she was witnessed to snore and to be fatigued contemporaneous to service (Record 04/01/2019 at 5). 

After a review of all of the evidence, the Board finds that the criteria for entitlement to service connection for sleep apnea have not been met 

While there are conflicting medical opinions, it is the responsibility of the Board to assess the credibility and weight to be given the evidence. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). The probative value of medical evidence is based on the physician’s knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board. See Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993). The Board may appropriately favor the opinion of one competent medical authority over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). However, the Board may not reject medical opinions based on its own medical judgment. Obert v. Brown, 5 Vet. App. 30 (1993); see also Colvin v. Derwinski, 1 Vet. App. 171 (1991). 

Here, the Board is most persuaded by the January 2019 VA opinion, which appears to be supported by the evidentiary record and based on accepted medical research linking sleep apnea to body mass. The Board finds that the medical opinion is adequate as it is informed by an August 2018 personal examination, the Veteran’s statements, her service treatment records, and her post-service treatment records. The examiner provided a discussion of the pertinent evidence and medical principals. To the extent the Veteran’s weight gain occurred during her second period of service, which it appears to have done, this cannot be considered. Likewise, the notation of sleep issues on 2002 examination cannot be considered in support of the claim as that period of service is not honorable for VA purposes. The lay observations of witnessing tiredness and snoring are certainly competent evidence. However, snoring and tiredness do not equate to sleep apnea. While sleep apnea may be accompanied by snoring and tiredness, individuals without sleep apnea may also snore or be tired. The private opinion is apparently not based on a personal examination, but merely on records review. This is not generally disqualifying, but is a factor to consider in assigning probative weight. Also, the fact that the private Nurse Practitioner did not acknowledge the distinction between qualifying and nonqualifying service, and did not acknowledge the role of post-service weight gain, renders the opinion of reduced probative weight. The weight of a medical opinion is diminished where that opinion is ambivalent, based on an inaccurate factual premise, based on an examination of limited scope, or where the basis for the opinion is not stated. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993); Sklar v. Brown, 5 Vet. App. 140 (1993). Here, the private opinion is based on an inaccurate factual premise and on an examination of limited scope.

In sum, the Board finds that sleep apnea is not related to service. In light of this finding, the Board concludes that service connection for the claimed sleep apnea is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

Entitlement to service connection for an acquired mental disorder.

A July 30, 2003, Clinical Note reveals the Veteran denied military sexual trauma in the past (Record 07/14/2016 at 771). 

Service treatment records from the Veteran’s qualifying period of service reveal no complaints, treatments, or diagnoses pertinent to a psychiatric disorder. The Veteran was separated from active duty on April 20, 1996. Her subsequent service is not qualifying for VA benefits. 

A report of medical examination performed in March 1997 a normal psychiatric examination (Record 05/15/2003 at 9). The Veteran denied any history of, or current, depression, excessive worry, or nervous trouble of any sort (Record 05/15/2003 at 13). 

A July 14, 2006, PTSD screen was negative (Record 07/14/2016 at 687). 

A February 9, 2011, PTSD screen was negative (Record 07/14/2016 at 512). 

The first reference to PTSD was in May 2015 when the Veteran described seeing a friend killed himself in 1996 (Record 07/14/2016 at 291). 

The first reference to military sexual trauma was in a June 16, 2016, psychiatry note (Record 07/14/2016 at 186). The examiner found that she meets criteria for PTSD diagnosis (Record 07/14/2016 at 186). .

An August 2016 PTSD Examination reveals the examiner’s opinion that a diagnosis of PTSD was not warranted nor was any diagnosis of a mental disorder. The examiner noted that, although the Veteran has been “diagnosed” with PTSD by mental health care providers at VA, there are several caveats that call into question the accuracy of a PTSD diagnosis. The Veteran made no complaints about PTSD or related symptoms from the time of her discharge to May 11, 2015. The Veteran reported an onset of symptoms almost two decades after the reported traumatic events. This late onset with no apparent triggering events would be highly unusual for PTSD (although not outside the realm of medical possibility). The Veteran’s report of symptoms coincided with denial of service-connection for at least 14 other conditions, one of which was bipolar disorder and a new claim for compensation and pension for PTSD. The Veteran reported only the vaguest of symptoms at the current VA examination, and no specific symptoms with accompanying objective behavioral markers have been documented in her treatment records, despite a “diagnosis” of PTSD. 

The Veteran’s statement in support of PTSD based on the suicide of a fellow soldier dated in June 2016 states that the Veteran “blocked out” the incident until recently. The medical literature does not support “blocking out” of such an incident that is clearly acknowledged and clearly remembered at the time of its occurrence only for said very clear memory to be “blocked out” and remembered or recalled at a later time, especially at a time that coincides with seeking compensation for having experienced the event. 

During the current VA examination, the Veteran did not exhibit any clinically significant psychological distress or arousal when describing either the suicide by hanging death of a fellow soldier or when describing the miscarriages. In fact, the Veteran did not even mention the second miscarriage, but only recalled it when specifically reminded of it. The Veteran’s descriptions of these events at the current VA examination were indicative of good cognitive functioning and intact memory, but the descriptions were not accompanied by mental health symptoms (distress, arousal, avoidance) that would indicate a mental health condition or disorder. Memories of stressful events, in and of themselves, are not indicative of PTSD; PTSD is a specific set of mental health symptoms that may (but generally do not) result from stressful or traumatic events. The medical literature indicates that most people who experience traumatic events (up to 75% of the general American population) do not go on to develop PTSD. Therefore, although the suicide and miscarriages could potentially support a diagnosis of PTSD in some individuals, these events do not appear to have done so in this Veteran. 

The Veteran also reported that she was nearly killed by her significant other, being assaulted and even shot at while driving. These personal assaults meet DSM-5 stressor criteria. However, the Veteran provided only vague descriptions of any current mental health symptoms that would indicate a diagnosis of PTSD. Again, events are not the same as PTSD. PTSD is not diagnosed simply because an individual has experienced a traumatic event. Rather, a diagnosis of PTSD is based upon a specific set of mental health symptoms that result from exposure to a traumatic event. For example, not all individuals who are in a car accident are paralyzed, although some are. The evaluations conducted by her treatment providers were not sufficient to establish a diagnosis of PTSD. The evaluations were conducted by a social worker. The assessment largely consisted of the Veteran self-reporting that she had PTSD as opposed to any actual assessment of symptoms. The social worker appears to have used the results of a specific test (PCL) as evidence for a diagnosis of PTSD. However, it should be underscored that the PCL is a self-report, face valid psychological instrument. It does not have validity scales. This measure simply asks an examinee to self-report ratings of the intensity of his or her symptoms. Test items are worded in a manner that is completely face valid, meaning that it is obvious to anyone who is familiar with PTSD or mental health symptoms in general which diagnostic criteria that each item is meant to assess. Thus, it is relatively easy for anyone who is so inclined to exaggerate or minimize his or her level of symptoms when responding to these times. Due to these limitations, the PCL is merely used as a screening instrument. A score within the clinical range is not sufficient for diagnostic purposes and merely suggests that a clinician consider that diagnostic area. Therefore, due to the above caveats about the validity of a PTSD diagnosis, as part of the current VA examination, the Veteran was administered the two diagnostic tests. The result of the first was within normal limits. The result of the second was deemed invalid. The Veteran’s profile was similar to the profiles of individuals who respond in an extremely exaggerated manner, endorsing a wide variety of rare symptoms and attitudes. Such results may stem from a number of factors that include excessive symptom checking, falsely claiming psychological problems, or a plea for help. Individuals with profiles similar to this Veteran may be motivated to present an unrealistically negative impression when completing the test such as deliberately responding to test items in a manner that is thought to communicate that the test taker is very psychologically disturbed when in fact that is not the case. 

The examiner concluded that the Veteran does not meet DSM-5 criteria for PTSD related to any events that occurred while on active duty. The only PTSD symptoms reported by the Veteran or evident from her self-reported psychosocial history is nightmares. She also reported a number of vague symptoms that are not consistent with PTSD. Again, as previously stated, although a “diagnosis” of PTSD has been rendered by various treatment providers at the VA, symptoms actually consistent with PTSD (other than self-reported nightmares) have not been documented in the treatment record. For example, the most recent medication management session (8/23/2016) which actually took place after the VA examination (8/15/2016) does not document symptoms or a mental status exam consistent with PTSD. The note documents, “Medication review with minimal psychotherapy services. She is here for her regular medication evaluation. She has no acute psychotic symptoms. She has nightmares every night. She has no suicidal thoughts. She has no acute psychotic symptoms. 

The examiner also found that the Veteran does not currently meet DSM-5 criteria for any depressive disorder, although it is within the realm of medical possibilities that she has at some point in the past. Of note is that symptoms actually consistent with Major Depressive Disorder have not been described in her treatment records, although it has been documented that she has been prescribed citalopram by a non-VA private provider. 

On examination, the Veteran was meticulously groomed; psychomotor behavior was within normal limits; speech was within normal limits; eye contact was appropriate; attitude toward the examiner was cooperative and friendly, she was viewing cell phone during the examination; affect was appropriate, full, with frequent laughing and smiling; mood was euthymic to happy with no visible evidence of either depression or anxiety at any time during the course of the examination, even when describing claimed stressors to the examiner; thought processes were normal; thought content was normal; delusions were denied; hallucinations were denied; obsessions/compulsions were denied; panic attacks were not reported; attention/concentration was within normal limits; the Veteran was oriented to person, place, and time; abstract reasoning was within normal limits; memory was within normal limits; the Veteran was able to maintain hygiene; the Veteran does not have episodes of violence; the Veteran does not behave impulsively; the Veteran does not have inappropriate behavior; the Veteran denied homicidal ideation or suicidal ideation; the Veteran understands the outcome of her behavior; and, the Veteran has adequate insight (Record 08/15/2016). 

After a review of all of the evidence, the Board finds that the Veteran does not have PTSD. 

While VA counselors have provided a diagnosis of PTSD, the Board finds the opinion of the August 2016 VA examiner to be highly persuasive. The opinion addresses the Veteran’s claims history, as well as her test results and demeanor on examination in a way that indicates it was the examiner’s intent to determine the legitimacy of her contentions rather to simply accept her statements as true in the furtherance of treatment. This is not clear from most of the purported diagnoses in the outpatient treatment records. Indeed, the initial diagnosis in May 2015 is a rule-out diagnosis, indicating uncertainty on the part of the examiner. Others are characterized as “possible” PTSD. While a VA Social Worker found in June 2016 that the criteria for a PTSD diagnosis were met, the Board accords greater probative weight to opinion of the VA examiner. While VA law does not prohibit mental health diagnoses to be rendered by Social Workers, VA law does favor the opinions of VA Psychiatrists and Psychologists, or those that VA has contracted with, for the purposes of establishing service connection for PTSD. See 38 C.F.R. § 3.304(f)(3). 

While the medical records indicate that the Veteran carried a diagnosis of major depressive disorder, the Board is persuaded by the VA examiner that she does not currently warrant such a diagnosis. However, to the extent such a diagnosis may have been valid at some point during the period on appeal, the Board finds that there was no associated injury or disease in service. Therefore, service connection is not warranted. 

Regarding the presumptive chronic disease provisions, these apply to mental disorders characterized as “psychoses,” which are neither shown or alleged here. 

In sum, the Board finds that there is no PTSD and that a current acquired mental disorder is not related to service. In light of these findings, the Board concludes that service connection for the claimed mental disorder is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

Increased Ratings—Law and Regulations

Disability ratings are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If two ratings are potentially applicable, the higher rating will be assigned if the disability more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. See 38 C.F.R. § 4.3.

A disability rating may require re-evaluation in accordance with changes in a veteran’s condition. Thus, it is essential that the disability be considered in the context of the entire recorded history when determining the level of current impairment. See 38 C.F.R. § 4.1. See also Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Nevertheless, where a veteran is appealing the rating for an already established service-connected condition, his present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal is based on the assignment of an initial rating for a disability, following an initial award of service connection for this disability, the rule articulated in Francisco does not apply. Fenderson v. West, 12 Vet. App. 119 (1999). Instead, the evaluation must be based on the overall recorded history of a disability, giving equal weight to past and present medical reports. Id. Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Entitlement to a compensable disability rating for the service-connected headaches for the period on appeal from October 31, 2016.

In a March 2019 rating decision, service connection for headaches was granted and an initial disability rating of 0 percent was assigned under Diagnostic Code 8100, effective October 31, 2016. 

Under Diagnostic Code 8100, migraine headaches are assigned a rating of 50 percent with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. A 30 percent rating is assigned with characteristic prostrating attacks occurring on an average once a month over last several months. A 10 percent rating is assigned with characteristic prostrating attacks averaging one in 2 months over last several months. A rating of 0 percent is assigned with less frequent attacks. 38 C.F.R. § 4.124a, Diagnostic Code 8100. 

The criteria set forth in Diagnostic Code 8100 are both successive and conjunctive. Thus, to satisfy the criteria for a higher level, a claimant must satisfy all the requirements of the lower levels (successive); and, must show each element listed for the particular rating to be assigned (conjunctive). See Johnson v. Wilkie, 30 Vet. App. 245 (2018). Further, because Diagnostic Code 8100 contains successive rating criteria, 38 C.F.R. § 4.7 (a higher rating should be assigned where the disability “more nearly approximates” the criteria for the higher rating) and 38 C.F.R. § 4.21 (all elements of a specific rating need not necessarily be found) are not applicable to Diagnostic Code 8100. 

The Veteran reported daily pounding headaches with sensitivity to light in May 2003 (Record 09/01/2004 at 7) and a history of migraines in May 2004 (Record 05/21/2004). 

An August 2013 Headaches Examination reveals the Veteran’s complaint of constant head pain, nausea, and sensitivity to light and sound. The examiner noted characteristic prostrating attacks occurring more than once per month, as well as very frequent prostrating and prolonged attacks of migraine headache pain. These result in missed work (Record 06/17/2015 at 5). 

A June 23, 2017, Clinical Note reveals the Veteran had been having 4 migraines per week, but was down to 2, and missed work “some” (Record 10/03/2017 at 76). 

An August 29, 2017, Clinical Note reveals the Veteran gets headaches every day early in the morning. She takes medication and goes back to sleep. When she wakes up, the headache is gone (Record 10/03/2017 at 10). 

An August 2018 VA Headaches Examination reveals a diagnosis of migraine headaches. The Veteran had pulsating or throbbing head pain, located at the side of the head. She took Botox injections every three months. Typical duration was less than one day. She did not have characteristic prostrating attacks or very prostrating attacks productive of severe economic inadaptability (Record 08/20/2018). 

An April 2019 private DBQ reveals the Veteran’s complaint of pulsating or throbbing head pain, vomiting, and dizziness/fainting spells. Headaches are more frequent than once per month. The Veteran has very frequent prostrating and prolonged attacks of migraine headache pain. The Veteran must return to bed when she has migraine attacks and is unable to work at these times (Record 04/01/2019). 

After a review of all of the evidence, the Board finds that the criteria for a disability rating of 30 percent have been met. 

The Board acknowledges that evaluating headaches is inherently difficult due to the subjective nature of the symptoms. Determining the intensity of head pain and whether symptoms are prostrating relies heavily on the Veteran’s description. Of course, most lay persons do not use terms such as “prostrating.” In this case, the Veteran has been very consistent in describing and seeking treatment for her headaches. The fact that she is being administered Botox injections in conjunction with non-steroidal anti-inflammatory drugs for treatment of symptoms is persuasive evidence that her headaches cause more impairment than is reflected in the current rating of 0 percent. The Board finds persuasive the August 2013 examiner’s description of characteristic prostrating attacks occurring more than once per month. This satisfies the criteria for a 30 percent rating. 

While the April 2019 opinion perhaps suggests that a higher rating is warranted, that opinion does not directly address the criteria for a 50 percent rating, which require very frequent “completely” prostrating and prolonged attacks “productive of severe economic inadaptability.” Notably the Veteran has retained employment throughout the period on appeal. Moreover, the description did not address the fact pattern described in the August 29, 2017, Clinical Note. The Veteran’s headaches occur in the early morning and are stopped after she takes medication. Thus, the Veteran’s inability to work in the early-morning hours should not significantly impact occupational function. The June 2017 description of missing “some” work is not persuasive evidence that she experiences severe economic inadaptability. The April 2019 opinion does not state that she does. The August 2018 opinion specifically states that she does not. The Board finds this opinion to be more consistent with the Veteran’s statements than the April 2019 opinion. 

In sum, the Board finds that the service-connected headaches have been manifested by characteristic prostrating attacks occurring on an average of once a month over last several months. In light of these findings, the Board concludes that a disability rating of 30 percent, but not higher, is warranted. As noted above, 38 C.F.R. § 4.7 does not apply with respect to headaches. In reaching the conclusion that a rating higher than 30 percent is not warranted, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

Neither the Veteran nor her representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 371 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

Earlier Effective Dates—Law and Regulations

Unless specifically provided otherwise, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. 38 U.S.C. § 5110(a). 

The effective date of an award of disability compensation to a veteran shall be the day following the date of discharge or release if application therefor is received within one year from such date of discharge or release. 38 U.S.C. § 5110(b)(1). 

This statutory provision is implemented by a regulation which provides that the effective date of an evaluation and award of compensation based on an original claim or a claim reopened after final disallowance, will be the date of receipt of the claim or the date entitlement arose, whichever is the later. See 38 C.F.R. § 3.400. 

A specific claim in the form prescribed by the Secretary of VA must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 U.S.C. § 5101(a); 38 C.F.R. § 3.151(a).

Entitlement to an earlier effective date for service connection of headaches.

In an October 2004 rating decision, service connection was denied for migraine headaches. The Veteran was provided with notice of her right to appeal the decision. The only correspondence from the Veteran received within one year of the decision is a request for service treatment records from 1989 through 1996. 

In October 2006, the Veteran submitted a request to reopen the claim. In a January 2007 letter, VA informed the Veteran that she must submit new and material evidence in order to have the claim reopened. She requested a copy of her service treatment records, which was provided in February 2007. In a July 2007 decision, VA denied the claim based on the lack of response to its request for new and material evidence. She was provided with notice of her right to appeal the decision. No additional correspondence was received from the Veteran until August 2011. 

In August 2011 the Veteran filed an application to reopen the claim for headaches. The application was denied in August 2013. Although notified of her appellate rights, she did not disagree with the August 2013 decision. Indeed, no correspondence from the Veteran was received within the one-year appellate period. 

In October 2014, the Veteran submitted an application to reopen service connection for headaches. That application was denied in June 2015. She was provided with notice of her right to appeal the decision. In May 2016, VA received a VA Form 21-526b (Veteran’s Supplemental Application for Compensation and/or Pension). The issues did not include headaches. In May 2016, the Veteran submitted a PTSD claim. She did not mention headaches. 

On October 31, 2016, VA received an application to reopen service connection for headaches. In a March 2019 rating decision, service connection for headaches was granted based on a favorable nexus opinion, and an initial disability rating of 0 percent was assigned under Diagnostic Code 8100, effective October 31, 2016. 

After a review of all of the evidence, the Board finds that an earlier effective date is not warranted. 

The Veteran did not appeal the October 2004, July 2007, August 2013, and June 2015 decisions. VA law requires that a claimant express disagreement with a rating determination, and the intent to appeal, within one year of the determination. See 38 C.F.R. §§ 20.200, 20.201, 20.300, 20.302. A request for records is not a Notice of Disagreement. 

The receipt of new and material evidence within the appeal period can stay the finality of a decision. 38 C.F.R. § 3.156(b). However, such was not received with respect to any of the prior decisions. 

The receipt of relevant service department records can trigger reconsideration of an otherwise final claim. However, such records were not received. 38 C.F.R. § 3.156(c). The relevant service treatment records are marked as received in May 2003. While the Veteran submitted photocopies of certain service treatment records in November 2016, these are duplicates of evidence already of record. 

The Veteran’s attorney has argued that the Veteran’s headaches were manifest within a year of service separation, citing to 38 C.F.R. §§ 3.303(b), 3.307(a), 3.309(a). However, these provisions do not apply to headaches or migraines. The Federal Circuit has held that the chronic disease provisions and the theory of continuity of symptomatology are limited to the specific chronic diseases listed under 38 C.F.R. § 3.309(a), which do not include migraines or any type of headaches. See Walker, 708 F.3d 1331.

The claim was ultimately granted based on a VA examination report and medical opinion obtained in August 2018. To the extent that the Veteran seeks to revisit all prior final decisions, such claim is without merit and must be dismissed as a freestanding claim for an earlier effective date. See Leonard v. Nicholson, 405 F3d 1333 (Fed Cir 2005); Rudd v. Nicholson, 20 Vet. App. 296 (2006). To hold otherwise would vitiate the rule of finality, which was expounded upon in Cook v. Principi, 318 F.3d 1334 (Fed. Cir. 2002). 

In sum, the Board finds that the earliest date of a pending claim of entitlement to service connection for headaches is October 31, 2016. The date of claim is the latter of two pertinent dates, i.e., the date of claim and the date entitlement arose. Accordingly, the Board concludes that October 31, 2016, the date of claim, is the earliest appropriate effective date. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

REASONS FOR REMAND

Entitlement to service connection for a right knee disorder is remanded.

Entitlement to service connection for a right hip disorder is remanded.

Entitlement to service connection for a right ankle disorder is remanded.

Entitlement to service connection for a left hip disorder is remanded.

Entitlement to service connection for a left knee disorder is remanded.

Entitlement to service connection for a left ankle disorder is remanded.

Service treatment records reveal that the Veteran injured her right ankle in service in June 1997 (Record 05/15/2003 at 39). She was diagnosed with a sprain and instability. The Veteran is currently diagnosed with a lateral collateral ligament sprain by VA examination dated August 2018 (Record 08/20/2018). Thus, a medical examination and opinion are necessary to determine the etiology of her current disability. 

The only opinions addressing the etiology of a right ankle disorder are in favor of the claim. However, both opinions are inadequate. 

The August 2018 VA examiner found that the claimed condition was at least as likely as not caused by an in-service injury. However, there was no rationale provided. The examiner simply listed evidence in the box provided for a rationale. Indeed, some of the evidence listed pointed to a post-service incurrence, i.e. “work-related right ankle injury last July 11th which she slipped on wet stairwell.” A rationale is not simply a listing of evidence, but an informed discussion of why that evidence supports the opinion rendered. 

Indeed, the Veteran sought treatment in July 2006 after slipping on a wet stairway and falling. She reportedly twisted her ankle to the right. X-rays were ordered to rule out a fracture. Multiple views of the right ankle on July 11, 2006, revealed soft tissue swelling. An MRI revealed what was suspected to be a partial tear of the calcaneofibular ligament. The Veteran was noted to be a surgical candidate if needed (Record 07/14/2016 at 12). 

Regarding the private opinion, which also supports service connection for a right ankle disorder, the opinion is inadequate because it does not discuss or even acknowledge the July 2006 slip-and-fall injury, which is clearly recorded in the Veteran’s outpatient treatment records (Record 07/14/2016 at 12, 161, 163). 

The RO denied the claim in March 2019 based on the absence of a current disability. However, in that decision, there was no discussion of the August 2018 diagnosis of a lateral collateral ligament sprain. The examination obtained by the RO clearly lists a diagnosis. If the diagnosis was intended to refer to the injury in service, this is not stated. The only favorable finding in the decision is that the Veteran injured her right ankle on June 9, 1997. The etiology is not discussed. As the error regarding a current disability resulted in the denial of the Veteran’s claim, the Board finds that this constitutes a pre-decisional duty to assist error. 

The remaining lower extremity disorder claims are asserted to be secondary to the right ankle disorder, as the private opinion submitted during the RAMP/AMA evidence submission period relates all of these issues to “overcompensation” and altered biomechanics (Record 04/01/2019 at 5). Accordingly, a remand is necessary to obtain an adequate opinion as to the etiology of the right ankle disability—one which addresses the role of the July 2006 slip-and-fall injury, and which provides a rationale which actually explains why the opinion is either for or against a relationship to service. A remand may also be necessary to obtain an opinion as to secondary service connection if the current right ankle disability is found to be related to service, as the rationale provided by the private examiner is quite vague as to the mechanism of causation. 

These matters are REMANDED for the following action:

1. Schedule an appropriate VA examination to determine the nature and etiology of her nonservice-connected bilateral hip, knee, and ankle disorders. The relevant documents in the claims file should be made available to the VA examiner. The examiner is directed to consider the Veteran’s reported history of a right ankle sprain in service, as well as her history of a post-service injury in July 2006. The examiner should identify all disorders of the right ankle that are currently present. The VA examiner is requested to offer an opinion as to the following:

a) whether it is at least as likely as not (i.e., to at least a 50-50 degree of probability) that any identified current right ankle disorder is causally or etiologically related to the Veteran’s active service. 

b) If a current right ankle disorder is found to be related to service, the examiner should opine as to whether it is at least as likely as not that the claimed disorders of the bilateral hips, bilateral knees, and left ankle related by causation or aggravation to the right knee disorder. 

Note: The term “at least as likely as not” does not mean merely within the realm of medical possibility, but that the medical evidence for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it.

All opinions are to be accompanied by a rationale consistent with the evidence of record. A discussion of the pertinent evidence, relevant medical treatises, and generally accepted medical principles is requested. If the examiner cannot provide an opinion without resorting to speculation, he or she shall provide complete explanations stating why this is so. In so doing, the examiner shall explain whether any inability to provide a more definitive opinion is the result of a need for additional information, or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question.

2. Readjudicate the remanded claims. If any benefit sought on appeal is not granted, the Veteran and her representative should be provided a supplemental statement of the case and an appropriate time period for response. The case should then be returned to the Board for further consideration, if otherwise in order.

 

 

JONATHAN B. KRAMER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board L. Cramp

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.